J-S37035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NUTTA VERDIER | : | |
| | : | |
| Appellant | : | No. 944 EDA 2021 |

Appeal from the PCRA Order Entered May 6, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008626-2010

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JANUARY 11, 2022**

Appellant Nutta Verdier appeals from the Order entered in entered in the Court of Common Pleas of Philadelphia County on May 6, 2021, denying his second petition filed pursuant to the Post Conviction Relief Act (PCRA).[1] Following a careful review, we affirm.

This Court previously set forth the relevant facts and procedural history herein as follows:

> On October 12, 2012, a jury convicted [Appellant] of Third-Degree Murder, Attempted Murder, Conspiracy, Aggravated Assault, Firearms Not to be Carried Without a License, and Possession of an Instrument of a Crime. [Appellant's] conviction stems from his role in a shoot-out involving three co-conspirators on a Philadelphia street, during which a bystander was shot and killed and another injured. The trial court sentenced [Appellant] to an aggregate term of not less than nineteen and one-half nor more than sixty years of imprisonment. Following reinstatement

---

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

of his direct appeal rights *nunc pro tunc*, we affirmed the judgment of sentence on September 11, 2017. [Appellant] did not seek further review in our Supreme Court.

[Appellant], acting *pro se*, filed the instant, timely PCRA petition on November 8, 2017, and appointed counsel subsequently filed an amended petition. [Appellant] claimed a right to relief based on after-discovered evidence in the form of affidavits prepared by his co-conspirator turned Commonwealth witness Jacque Warren[2] and his brother, Sharif Warren. At trial, Jacque Warren testified that [Appellant], along with his co-conspirators, shot at a rival and the bystander was killed in the crossfire. However, in his affidavit, dated May 27, 2015, Jacque Warren recants this testimony and avers that [Appellant] was not present when the shooting took place. (**See** J. Warren Affidavit, 5/27/15). Sharif Warren's statement similarly avers that when he visited his brother in prison in 2011, Jacque conceded that [Appellant] was innocent and was not present at the scene of the shooting. (**See** S. Warren Statement, 8/05/13). Sharif's statement is dated August 5, 2013.

After issuing notice of its intent to do so, the PCRA court entered an order and opinion dismissing [Appellant's] petition. He then filed this appeal arguing that the PCRA court erred in denying relief on his claim of after-discovered evidence based on Jacque Warren's recantation statements and that the PCRA Court improperly denied his PCRA counsel's request for a continuance

*Commonwealth v. Verdier*, 2019 WL 1450358, at *1 (Pa.Super. Apr. 1, 2019) (unpublished memorandum) (footnotes omitted), *appeal denied*, 217 A.3d 212 (Pa. 2019).

---

[2] In its appellate brief, the Commonwealth indicates it had recently learned that Jacque Warren was killed on January 10, 2021. **See** Commonwealth's Brief at 25. Following a motion of the Philadelphia Defender Association, the trial court formally abated Warren's criminal case in its Order dated April 21, 2021. **See Id**. at Exhibit B. As a result, Appellant would be unable to obtain Warren's live testimony at a PCRA hearing to corroborate his unsworn declaration that he and his brother committed the shooting of which Appellant and his co-defendants were convicted.

On March 16, 2021, Appellant filed the instant PCRA petition, his second, *pro se*. On March 26, 2021, the PCRA court issued its Notice of Intent to Dismiss pursuant to Pa.R.Crim.P. 907. On April 7, 2021, Appellant filed a counseled, amended petition, and on May 6, 2021, the PCRA court dismissed the petition without a hearing.

In his brief, Appellant presents the following claims for our review:

I. Did the PCRA [c]ourt err when it found that the newly disclosed letter dated September 17, 2012 wherein Bowe[3] advised the Commonwealth that Judge Minehart indicated that he would look favorably at Warren's resentencing if he were to cooperate in the Appellant and his co-defendant's trial was not timely filed under 42 Pa.C.S.A §9545(b)(1)(ii)(newly discovered evidence) and/or 42 Pa.C.S.A §9545(b)(1)(i) (governmental interference) and/or lacked merit?

II. Did the PCRA [c]ourt err when it found that the claim related to the newly disclosed history of misconduct committed by Det. James Crone, Det. Joseph McDermott and Police Officer Thomas Fitzpatrick was not timely filed under 42 Pa.C.S.A §9545(b)(1)(ii) (newly discovered evidence) and/or 42 Pa.C.S.A §9545(b)(1)(i) (governmental interference) and/or lacked merit?

III. Did the PCRA [c]ourt err in not authorizing/ordering the discovery requested by the Appellant pertaining to additional referenced but undisclosed history of misconduct by detectives and officers who investigated this case.

IV. Did the PCRA [c]ourt err in not conducting an evidentiary hearing on either/both of the above claims?

---

[3] Apparently, a reference to Jacque Warren's trial counsel, William Bowe.

J-S37035-21

Brief for Appellant at 3-4. As these issues are interrelated, we will address

them together.[4]

_____

[4] Both Appellant and the Commonwealth represent in their respective briefs that co-defendant Eric Cooper filed his initial PCRA petition asserting claims similar to those Appellant previously advanced, and the information on which Appellant relies herein was produced as part of Cooper's proceeding and provided to Appellant. Specifically, the Commonwealth stresses that:

> Cooper's petition was assigned to Judge O'Keefe, however rather than Judge McDermott. And whereas Judge McDermott dismissed [Appellant's] first petition without a hearing, Judge O'Keefe has granted a hearing on Cooper's identical recantation/coercion claim based on the Warren Brothers' certifications. [Appellant's] claims in his second PCRA petition now under this Court's review arise out of discovery supplied to both co-defendants in advance of Cooper's evidentiary hearing before Judge O'Keefe.

Commonwealth's Brief at 19-20.

Recognizing this procedural posture, the Commonwealth states it would agree to a PCRA hearing on the recantation/coercion claim, without waiving any applicable defenses and while opposing further proceedings on Appellant's claims, *inter alia*, that an undisclosed cooperation agreement existed between the Commonwealth and Jacque Warren. *Id*. at 20.

In addition, Appellant references a pending federal petition for writ of habeas corpus petition which Appellant filed on April 14, 2020, and for which the federal court granted a stay pending the instant PCRA litigation. Appellant's Brief at 19 n. 8.

> However,
> It is well established that a court may not ordinarily take judicial notice in one case of the records of another case, whether in another court or its own, even though the contents of those records may be known to the court. **Steel v. Levy, supra**; **R.K.O. Dist. Corp. v. Shook**, 108 Pa.Super. 383, 387, 164 A. 855; **Walter v. Baldwin**, 126 Pa.Super. 589, 596, 193 A. 146. **Naffah v. City Deposit Bank et al.**, 339 Pa. 157, 160, 13 A.2d 63, 64 (1940). This is especially so "when the facts are not admitted". **Steel v. Levy**, 282 Pa. 338, 342, 127 A. 766 (1925). Thus, a court is admonished not to take judicial notice of the record of another case, if not pleaded. **Chorba v. Davlisa Enterprises, Inc.**, 303

*(Footnote Continued Next Page)*

Before we reach the merits of Appellant's aforementioned issues, we first must determine whether we have jurisdiction to do so. Pursuant to 42 Pa.C.S.A. § 9545(b)(1), any PCRA petition must be filed within one year of the date the judgment becomes final unless Appellant alleges and proves that the petition falls within three enumerated exceptions, specifically:

**(b) Time for filing petition.—**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A § 9545(b)(1)(i)-(iii).

In addition,

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within one year of the date the claim could have been presented.

---

Pa.Super. 497, 450 A.2d 36 (1982). *Accord* **Coccia v. Coccia**, 285 Pa.Super. 259, 427 A.2d 212 (1981).

**Woolard v. Burton**, 498 A.2d 445, 448 (Pa.Super. 1985).

(3) For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.

42 Pa.C.S.A § 9545(b)(2), (3).

The PCRA time restrictions are jurisdictional in nature. Thus, "Pennsylvania courts may not entertain untimely PCRA petitions." *Commonwealth v. Watts*, 23 A.3d 980, 983 (Pa. 2011). Indeed, the jurisdictional nature of the PCRA time-limits are such that they implicate a court's power to adjudicate a controversy. *Commonwealth v. Fahy*, 737 A.2d 214, 222 (Pa. 1999).

Moreover,

... a PCRA petitioner is not automatically entitled to an evidentiary hearing. We review the PCRA court's decision dismissing a petition without a hearing for an abuse of discretion.
[T]he right to an evidentiary hearing on a postconviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

*Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa.Super. 2014) (citations omitted and brackets in original).

Appellant's judgment of sentence became final on October 11, 2017, thirty days after the period of time in which he had to file a petition for

allowance of appeal with the Pennsylvania Supreme Court expired. Pa.R.A.P. 1113(a). As such, Appellant had until October 11, 2018, in which to file a timely PCRA petition. The instant petition, filed on March 16, 2020, is facially untimely; thus, Appellant was required to plead and prove one of the above-enumerated exceptions to the PCRA time bar.

Appellant initially maintains in his appellate brief that the PCRA court erred in dismissing his claims of "new evidence/facts" and governmental interference without a hearing. Appellant's Brief at 14-15, 28. Throughout the brief, Appellant at times refers to both newly disclosed evidence and facts. *Id*. at 14-16. In addition, the PCRA court finds that Appellant's claim of police misconduct meets "the newly discovered facts exception" to the PCRA time bar but later addresses the merits of what it terms his "timely claim of after discovered evidence." PCRA court Opinion, filed 5/6/21, at 8-9. In doing so, both Appellant and the PCRA court conflate the newly-discovered fact exception with an after-discovered evidence claim. Compare 42 Pa.C.S.A. § 9545(b)(1)(ii) with 42 Pa.C.S.A. § 9543(a)(2)(vi); *see* **Commonwealth v. Brown**, 111 A.3d 171, 178 (Pa.Super. 2015), appeal denied, −−− Pa. −−−−, 125 A.3d 1197 (2015). Nevertheless, we find Appellant's attempt to invoke either exception to the PCRA time bar herein fails.

It is possible for a petitioner to plead and prove the newly-discovered fact exception, which gives the PCRA court jurisdiction and permits it to

consider the petition on the merits, and then ultimately fail on the merits of an after-discovered evidence claim. The newly-discovered fact exception:

> has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the facts upon which the claim was predicated were unknown and 2) could not have been ascertained by the exercise of due diligence. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

> \*\*\*

> On the other hand:

> To obtain relief based on after-discovered evidence, [a petitioner] must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

***Commonwealth v. Brown***, 141 A.3d 491 n. 8 (Pa.Super. 2016) (citations omitted).

The PCRA court determined information regarding the alleged police misconduct concerned new evidence/facts which were not discoverable with Appellant's exercise of reasonable diligence.  To the contrary, the court further found his claim regarding Warren's testimony does not.  PCRA court Opinion, filed 5/6/21, at 7-9.  In doing so, the trial court thoroughly reasoned as follows:

> . . . The facts underlying the allegations of misconduct against the detectives and police officer were unknown to [Appellant] prior to receiving them through his requests because this is not the type of information that can be uncovered through regular due diligence. Thus, this [c]ourt has jurisdiction to reach the merits of

[Appellant's] claim.

The physical letter from Attorney Bowe to ADA Watson Stokes was unknown to [Appellant] until he received it on January 27, 2021, but its contents were known to him. The possibility of Warren receiving lenient treatment because of his testimony at [Appellant's] trial was known to [Appellant] at the time of his trial and formed the basis for his direct appeal and first PCRA petition. Because he cannot show that this letter reveals any new information that was not available at his trial, his claim fails for want of jurisdiction.

Addressing the merits of [Appellant's] timely claim of after-discovered evidence, to obtain relief on after-discovered evidence, a petitioner must show that the evidence: (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) would not be used solely to impeach the credibility of a witness; and, (4) would likely result in a different verdict if a new trial were granted. *Commonwealth v. Williams*, 215 A.3d 1019, 124 (Pa.Super. 2019) (citing *Commonwealth v. Pagan*, 950 A.2d 270, 292 (Pa. 2008)). For a petitioner to prove a *Brady*[5] violation, they must show: (1) the prosecution was in possession of favorable evidence to the petitioner, either exculpatory or impeaching; (2) the prosecution suppressed that evidence; and, (3) the petitioner was prejudiced by this suppression. *Commonwealth v. Donoughe*, 243 A.3d 980 (Pa. Super. 2020).

****

[Appellant] alleges that the Commonwealth violated his due process rights by failing to disclose instances of police misconduct. [Appellant] supplies evidence indicating the misconduct of Detectives Crone and McDermott, as well as Police Officer Fitzgerald. On November 25, 2013, Detective Crone received an official reprimand for failing to report a violent domestic dispute. Additionally, on August 29, 2018 the Philadelphia Inquirer reported that Detective Crone was under internal investigation for writing racially charged memo to an African-American colleague. [Appellant] avers that Detective Crone is also under investigation

---

[5] ***Brady v. Maryland***, 373 U.S. 83 (1963) (holding a defendant must establish the prosecution withheld evidence favorable to the defense and that but for the suppression there is a reasonable probability that the verdict would have differed).

for misconduct related to *Commonwealth v. Tyheed Brown*, (CP-51 -CR-0002593- 2018) and requests that the Commonwealth provide the findings of the internal investigation into Detective Crone's letter and his involvement in that matter.

Detective McDermott, then a patrol officer, was reprimanded on July 18, 1993, after verbally and physically abusing a prisoner during transport and failing to report that he used his blackjack. [Appellant] provided the Misconduct Disclosure he received through his Right to Know requests, which was almost entirely redacted except for the conclusion, finding Detective McDermott guilty of misconduct. [Appellant] further avers that Detective McDermott is no longer employed by the Philadelphia Police and that his misconduct in *Commonwealth v. Warren Wooden* (CP-51 -CR-0010810-2010) is being investigated, and requests the Commonwealth pass this information to him.

On April 1, 1997, Officer Fitzgerald had been reprimanded for falsely describing the way other police officers removed an unnamed paralyzed individual from an Emergency Patrol Wagon. This occurred after another officer pistol-whipped that individual, causing a cut to his ear. While in the Emergency Patrol Wagon, that individual fell forward and hit his head, causing him to be permanently paralyzed from the neck down.

[Appellant] cannot succeed on his claims of *Brady* violations. [Appellant] fails to relate claims investigators' misconduct in other matters to his underlying conviction. Other than bald assertions that their misconduct in other matters implicates their involvement in this matter, [Appellant] has not established that any of these instances are relevant to his case. [Appellant] would only be able to use this information to impeach the testimony of Detectives Crone and McDermott and Police Officer Fitzpatrick, and this information has limited value as impeachment evidence. The misconduct of Detective Crone occurred after his involvement and could not be introduced in this matter and did not implicate his investigation procedures as a detective. The misconduct of Detective McDermott and Police Officer Fitzpatrick are both equally archaic and irrelevant, and do not implicate their investigation of the Petitioner's matter.

Moreover, [Appellant] would not have been unable to impeach Detective McDermott and Police Officer Fitzgerald [sic] with this information because both incidents occurred over ten years before [Appellant's] trial. *See* Pa.R.E. 609(b) (prohibiting use *crimen falsi* convictions over ten years old unless their probative value substantially outweighs their prejudicial effect). Detective McDermott's misconduct pertained to his behavior as a

patrol officer and occurred nearly nineteen years before the Petitioner's trial while Police Officer Fitzpatrick's misconduct occurred nearly fifteen years previously. Because [Appellant] cannot show that these instances are relevant in any way to his matter or that he would have been able to even introduce them at trial, he his [sic] entitled to neither an evidentiary hearing nor relief on this claim.

Addressing [Appellant's] discovery claims: it is axiomatic that in PCRA proceedings discovery is only permitted upon leave of court after a showing of exceptional circumstances. 42 Pa.C.S. § 9545(d)(2); Pa.R.Crim.P. 902(E)(1). Exceptional circumstances are not defined, and the Superior Court has consistently reaffirmed that it is in the discretion of the trial court to determine whether a case is exception [sic] and discovery is warranted. *Commonwealth v. Frey*, 41 A.3d 605, 611 (Pa.Super. 2012). A "mere speculation" that exculpatory evidence exists does not establish exceptional circumstances. *Id*. (citing ***Commonwealth v. Dickerson***, 900 A.2d 407, 412 (Pa. Super. 2006)).

[Appellant] has not established exceptional circumstances in this matter because he has not established that the past behavior of police is in anyway [sic] relevant to his underlying conviction. Because granting discovery would be tantamount to granting a license for a fishing expedition, his request for discovery is denied.

Even though [Appellant's] remaining after-discovered evidence claim with respect to the testimony of Warren is untimely, this [c]ourt shall briefly address its merits for the benefit of any future proceeding. A petitioner seeking relief under the PC.RA must also show that their claims are not previously litigated. 42 Pa.C.S. § 9544. A claim is previously litigated if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. *Commonwealth v. Reid*, 235 A.3d 1124, 1144 (Pa. 2020). While the letter from Warren's attorney to ADA Watson Stokes is new, [Appellant] has raised the issue of Warren's testimony on direct appeal and in his previous PCRA petition and the Superior Court of Pennsylvania has affirmed this Court's dismissal of those claims each time.

On October 4, 2012, Warren testified that he did not know that [Appellant], codefendant Cooper, or "GoGo" were armed. before Cobb drew his firearm. N.T. 10/4/12 at 137; 139-140. Court was adjourned without Warren being able to complete his testimony. The trial court ordered Warren not to speak to anyone about the case until his testimony resumed on October 9, 2012.

- 11 -

On that day, in a conference with ADA Watson Stokes, [Appellant's] and codefendant's defense counsels [sic], and Attorney Bowe, Attorney Bowe informed the [c]ourt that ADA Watson Stokes contacted him over the weekend and informed him that she was not pleased with Warren's testimony because she believed it contradicted his previous statement to police. Warren was cross-examined by the defense, outside the presence of the jury, on what he was told over the weekend. Warren testified that he had spoken to his mother and Attorney Bowe, in violation of the [c]ourt's sequestration order, but nothing that was said would change his testimony. Both counsel for [Appellant] and co-defendant moved for a mistrial. Warren's testimony resumed on October 9, 2012, and on re-direct examination, contradicted his previous statement that he knew his colleagues had firearms before they got into the van because he had seen the weapons. N.T. 10/9/2012 101-102.

Warren's turnabout prompted both defense attorneys to argue, at sidebar, that his change of testimony made relevant the entirety of the conversation between ADA Watson Stokes and Attorney Bowe and renewed their motion for a mistrial, which was denied. Instead, the trial court accepted the following stipulation:

> Over the weekend, the District Attorney spoke to the witness' lawyer and told him that she was dissatisfied with the witness' testimony because he testified that he didn't see anyone get in the van with a gun, whereas during trial preparation and in a pretrial interview he had stated that all three men had guns when they got in the van. The witness's attorney then communicated this to the witness and indicated to him that this might affect future proceedings before Judge Minehart [the resentencing judge].

N.T. 10/9/2012 at 146. When [Appellant's] counsel cross-examined Warren, he once again changed his testimony, and explained that he did not know that his colleagues were armed before they got in the car. *Id*. at 151.

On direct appeal, [Appellant] challenged the trial court's failure to grant a mistrial after conversations between the prosecution and Warren's attorney came to light. Judge Temin denied the motion for a mistrial, finding that a new trial would not be the appropriate remedy because Warren would still be in the same position. Judge Temin stated: "I'm sure that he already knows that his sentence depended on whether or not he ... 'cooperated' with the Commonwealth. And ... 'cooperated' means to testify in a certain way. I'm sure he knows that. He's not stupid.

And that's what every witness ... who is a cooperating-codefendant [knows]. So, I don't think that he knows any more now after having spoken to Mr. Bowe [than] when [defense counsel was] cross-examining him."" N.T. 10/9/2012 33-34. On September 11, 2017, the Superior Court of Pennsylvania, affirmed this Court's dismissal of [Appellant's] claim that Judge Temin erred in not granting a mistrial, finding that in any future proceeding, the risk of Warren losing out on any favorable resentencing would be an ever-present-specter shadowing his testimony. To that end, Judge Temin informed jurors that they may view Warren's testimony as an attempt to "curry favor" with the Commonwealth. N.T. 10/10/2012 at 164.

Additionally, in [Appellant's] previous PCRA petition, he argued that his trial counsel was ineffective for failing to object to the Commonwealth's failure to disclose its agreement of understanding with Warren. As discussed in this Court's April 19, 2018 Order and Opinion Dismissing the Petitioner's claim, the Petitioner fails to establish that the Commonwealth and Warren had any agreement. *Id*. at \*10-11. The letter from Attorney Bowe indicates that Judge Minehart might "look favorably" upon Warren's cooperation at his resentencing hearing, a fact which was known and analyzed at length during his testimony. The letter does not indicate that there was a definite agreement between the Commonwealth and Warren, and merely indicates the possibility of a more favorable sentence should he cooperate with the Commonwealth. Ultimately, the decision on how to resentence Warren rested solely in the purview of Judge Minehart, whose decision was not reduced to a contractual certainty. [12] Ultimately, On October 26, 2012, Judge Minehart resentenced Warren to twelve and a half to twenty-years imprisonment on the charge of Third-Degree Murder, and imposed a consecutive ten years of reporting probation for Conspiracy. [13]

[Appellant's] assertion that the letter from Attorney Bowe to ADA Watson Stokes is not previously litigated is belied by the record. The unusual facts surrounding this matter have been litigated *ad nauseam* and this instant attempt to relitigate matters fails, just as before.

_____
[12] The Superior Court specifically addressed lack of an explicit agreement between Warren and the Commonwealth:

Our Review of the transcripts has not revealed an explicit admission that Warren had an agreement with the Commonwealth. Warren himself repeatedly denied that he had any form of deal with the Commonwealth, while admitting that he was hoping that his sentence would be reduced. N.T. 10/9/12 57-58. Given the arguments of the parties and statements of the trial court in the transcript before us, it is clear that Warren was, to some extent, cooperating with the district attorney's office and he had some expectation that his previously vacated sentence could be reduced upon resentencing if he curried favor with the district attorney.

*Commonwealth v. Verdier*, 2910 EDA 2016, at n. 6 (Pa. Super. Decided September 11, 2017) (unpublished memorandum).

[13] Judge Minehart originally imposed consecutive sentences of imprisonment of twelve and a half to twenty-five years for Third-Degree Murder, five to ten years for each count of Aggravated Assault, and a concurrent sentence of ten to twenty years imprisonment for Conspiracy, for at total sentence of thirty-two and a half to sixty-five years imprisonment. At the resentencing, Judge Minehart imposed no further penalty on the Aggravated Assault charges.

PCRA Court Opinion, filed 5/6/21, at 8-16.

Upon our review of the record, we find no abuse of discretion. Appellant indicates only that Detectives Crone and McDermott and Officer Fitzpatrick "worked on his case," and a review of the record reveals they were among numerous Philadelphia Police Officers associated with the investigation. Importantly, Detective Crone was involved in a domestic disturbance which occurred after Appellant's arrest and bore no relation to Appellant's trial. The offensive letter he admitted to writing was not addressed to a named individual and was penned after Appellant's trial.

- 14 -

Detective McDermott's reprimand stemmed from his verbal and physical abuse of a suspect over fifteen years prior to Appellant's arrest, and his hearing was held on July 18, 1993. Also, Officer Fitzpatrick's discipline record revealed he had been driving a van transporting a prisoner on April 1, 1997, fifteen years prior to Appellant's trial, who was assaulted and seriously injured by other officers riding therein.

Although the behavior which led to the disciplinary actions taken against these police officers is certainly troubling, these records alone cannot support a successful claim of after-discovered evidence under Section 9454(b)(1)(a)(vi) or, in the alternative, of *Brady* violation herein, for Appellant has failed to show a nexus between them and his convictions. Appellant simply presents a summary of the officers' behavior and resultant discipline and stresses that this information became known to him only as a result of the recent disclosure in conjunction with co-defendant's PCRA petition. Appellant's Brief at 18-23.

Appellant thereafter baldly alleges the disciplinary records "could have" been used to call the entire investigation of the murder of which he had been convicted into doubt and lead to a different verdict. *Id*. at 24-26. He similarly attempts to invoke the "newly disclosed facts/evidence exception" to the PCRA time bar by baldly claiming the Jacque Warren's letter reveals previously unknown information that Warren knew the trial court would "look favorably" on his cooperation in this case. *Id*. at 28-29. Therefore, we find that, for the

reasons supplied by the PCRA court, the record conclusively establishes that defendant's proffered "after-discovered evidence/facts" could not entitle him to relief.

In his third issue, Appellant maintains the PCRA court erred and abused its discretion in denying his discovery request for information regarding alleged pending investigations by the Conviction Integrity Unit of the District Attorney's Office relating to Detectives Crone and McDermott. Regarding discovery in PCRA proceedings, Rule 902(E) of the Pennsylvania Rules of Criminal Procedure provides:

> **(E) Requests for Discovery**
> (1) Except as provided in paragraph (E)(2), no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of exceptional circumstances.
> (2) On the first counseled petition in a death penalty case, no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of good cause.

Pa.R.Crim.P. 902(E). As this is not a death penalty case, Appellant was required to demonstrate exceptional circumstances in support of his discovery request.

As the PCRA court acknowledged, the PCRA and the applicable rules do not define "exceptional circumstances" that would support discovery on collateral review, but rather it is within the province of the PCRA court to determine, in its discretion, whether a case is exceptional and discovery is warranted. This Court will not reverse the PCRA court's determination absent

an abuse of discretion. ***Commonwealth v. Frey***, 41 A.3d 605, 611 (Pa.Super. 2012).

"Mere speculation" that exculpatory evidence may exist does not establish that exceptional circumstances exist. ***Commonwealth v. Dickerson***, 900 A.2d 407, 412 (Pa.Super. 2006); ***Commonwealth v. Hanible***, 30 A.3d 426, 452 (Pa. 2011) (holding that a showing of good cause under Rule 902(E)(2) "requires more than just a generic demand for potentially exculpatory evidence").

Herein, Appellant supports his claim that he is entitled to discovery with speculation and bald allegations that he might discover exculpatory evidence pertaining to ongoing proceedings relating to the officers. Thus, we find the PCRA court did not abuse its discretion in its determination that Appellant did not show exceptional circumstances to warrant production of the discovery he requested.

Finally, when deciding the PCRA court's alleged error in not granting defendant an evidentiary hearing, we are mindful that "[i]t is well settled that [t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." ***Commonwealth v. Maddrey,*** 205 A.3d 323, 328 (Pa.Super. 2019) (internal quotations omitted). Further, where a defendant seeks the reversal of a PCRA court's decision to dismiss a defendant's petition without a hearing, defendant must show "he

raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." ***Maddrey****,* 205 A.3d at 328 (quoting ***Commonwealth v. Hanible****,* 30 A.3d 426, 452 (Pa. 2011)).

For the reasons set forth above, we find the trial court did not abuse its discretion in  dismissing Appellant's second petition without an evidentiary hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/2022