J-S27037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| YUWSHA I. ALWAN | : | |
| | : | |
| Appellant | : | No. 2448 EDA 2021 |

Appeal from the PCRA Order Entered October 28, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012299-2011

BEFORE: STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED MARCH 14, 2023**

Yuwsha I. Alwan ("Alwan") appeals from the order dismissing his serial petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Additionally, Alwan has filed an Application for Remand. We deny his application and affirm the order.

The PCRA court provided the following factual and procedural history:

> [I]n March [] 2008, Nicholas Pisano was shot in his apartment at 356 N. Front Street in Philadelphia. Emergency personnel took him to Hahnemann University Hospital, where he died on that same day. He was twenty-five years old at the time of his death.
>
> Philadelphia Police Officer Quinten White was the first police officer to arrive at the scene of the shooting, where he observed a small quantity of marijuana on a living room table and a MAC-10 automatic weapon in the bedroom, on the bed, partially covered by a sheet. Officer White spoke to Joshua McDonald, who was in the apartment at the time of the shooting, and who told

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

him that two black men in their thirties wearing dark clothing came to the door purporting to be making a pizza delivery, and that the men shot Pisano and then fled the scene. As Officer White was pulling up to the scene, he inadvertently drove over a pizza box.

McDonald came to visit Pisano in the afternoon on the day of the shooting. He and Pisano watched a movie and played video games together. While the movie was playing, an African-American man with what McDonald described as a "Muslim-sounding name" came to the door and spoke with Pisano for about five minutes. Pisano briefly introduced him to McDonald, but McDonald could not recall his name or identify him.

Later that night, McDonald heard a knock on the door and a male voice saying[,] "[P]izza delivery." Pisano replied[,] "[W]e already got our food," as the two men had ordered delivery earlier. The voice said, "[W]ell, just open the door." Pisano said, "[I]t must be around back. It happens all the time." Again, the voice said[,] "[J]ust open the door."

McDonald did not feel comfortable with the interaction, which did not feel "right" to him, so he retrieved the gun that Pisano had shown him earlier in the evening, which was hidden in the couch where he was sitting. As McDonald reached down for the gun, he heard a shot. When he looked up, Pisano had fallen. He saw someone coming through the doorway and he pointed the gun toward them and tried to shoot. When he pulled the trigger, nothing happened, but the intruder ran. He saw a second man, but did not get a good look at him. He gave a statement to homicide detectives a few hours after the shooting, in which he identified the shooter as Joseph Harville.

Homicide detectives found approximately seven pounds of marijuana in Pisano's apartment, which they estimated to have a street value of $31,728. They also obtained surveillance video from a security camera located outside of Pisano's apartment building. Clyde Frazier, an officer with the Philadelphia Police Department's Crime Scene Unit, recovered fingerprints from the pizza box found outside of Pisano's apartment and matched those prints to Robert Gray, Harville's life-long friend. At the time of the shooting, Gray had known [Alwan] through Harville for approximately three or four years.

After finding out that his fingerprints had been identified on the pizza box and that the police had video footage of him with Harville outside of Pisano's apartment building on the night of the shooting, Gray gave a full confession to his involvement in the shooting. The surveillance video depicts Gray and Harville walking back and forth outside of Pisano's building, with Gray holding a pizza box and Harville with his hands in his pockets.

In his statement of April 4, 2008, Gray said the following about what happened four days earlier on the night of the shooting:

> We just hung out for a little while, that's when [Alwan] starts talking about this dude that had all this weed. He said he just left the boy's house and the guy had like ten pounds of weed in the dryer and some on his countertop. He said the boy had a lot of money in a Nike box under the table in the back room where the dog was. [Alwan] was like[, "W]we should roll on the boy.["] He said the guy was a punk and that we wouldn't have to do nothing but scare the boy. We all agreed[,] and then [Alwan] gave Harville the gun.

Gray explained that, after ordering a pizza and driving to pick it up, the three defendants proceeded as follows:

> I parked the car under the bridge around the comer from the boy's house, then me and Harville and [Alwan] walked around to the house. [Alwan] walked a little bit behind us and showed us where the house was at. Then he stayed back while me and Harville went to the dude's house. I walked up the steps first and Harville was behind me. I still had the pizza with me. And when Harville rang the doorbell, he says[, ] ["D]elivery.["] The guy inside opens the door and says[, "W]rong bell. You want the back.["] He had a Bible in his hands and said like two more times[, "Y]ou want the back.["] He's like, ["]I'm telling you, you got the wrong apartment. It happens all the time. You want the back door.["] I said, ["N]o I want some weed.["] He was like, ["Y]ou definitely got the wrong house.["] That's when Harville come up behind and he pushes past me. He knocked the pizza out of my hand when he pushed me. As Harville pushed past me, the guy must have seen the gun[,] because he looked shocked. That's when I noticed there was another guy inside on the couch. . . . The guy on the

couch grabs a gun from under a pillow. He stood up pointing at us. At that point I ducked and started to run. That's when Harville shot. I was already down the steps by the time Harville shot then I was gone. I ran to the car and [Alwan] was already in the driver's seat. I got in the backseat and Harville came up behind me and got into the front passenger seat. He still had the gun in his hand. Then we just took off.

William Shute, a special agent with the Federal Bureau of Investigation, analyzed [Alwan's] cellular phone records from March 31, 2008 through April 10, 2008. Special Agent Shute's analysis revealed that [Alwan] and Gray had exchanged seventy-five calls during that period. Twenty-nine of those calls took place on the day of the shooting and twenty-three of them occurred on the following day. [Alwan] also made an outgoing call at 9:33 p.m. on March 31, 2008; approximately two minutes before Pisano was murdered. Based upon the location of the cellular tower that [Alwan's] phone used to place that call, Special Agent Shute determined that it was made within several blocks of the shooting.

Police arrested Gray and Harville in connection with Pisano's murder. [I]n June [] 2011, Gray pleaded guilty to third-degree murder, conspiracy to commit murder, possession of an instrument of crime, and robbery. As a condition of Gray's guilty plea, he agreed to assist the Commonwealth with the ongoing investigation and, if necessary, to testify against his co[-]defendants. On June 30, 2011, Gray testified at Harville's murder trial. Gray took the stand and presented an account of the shooting that conflicted with his statement to the police on April 4, 2008. Specifically, Gray testified that it was [Alwan], not Harville, who shot Pisano. Gray also testified that Harville told [Alwan] that he did not want to participate in the robbery. [In July 2011, a jury convicted Harville of second-degree murder, conspiracy to commit murder, carrying a firearm without a license, carrying a firearm in Philadelphia, possession of an instrument of crime, and burglary.]

On August 30, 2011, [Alwan] was arrested and charged with murder, robbery, criminal conspiracy to commit robbery, possession of an instrument of crime, carrying a firearm without a license, and carrying a firearm on public streets or property. On August 12, 2013, [Alwan] proceeded to a jury trial. On the third

- 4 -

day of [Alwan's] trial[,] the Commonwealth called Gray as a witness, whereupon he offered a third mutually exclusive description of the shooting. This time, Gray testified that he and Harville planned and executed the failed robbery without any assistance from [Alwan]. When the prosecutor confronted Gray with his conflicting statement to police shortly after the murder and the contradictory testimony that he gave at Harville's trial, Gray explained that he "had to put it on someone." [Additionally, the jury heard testimony during Alwan's trial about Gray's plea agreement; Alwan's counsel also cross-examined and impeached Gray about his motives for giving inculpatory statements against Harville and Alwan.]

[Alwan] testified in his own defense and denied any involvement in the shooting. During cross-examination, [Alwan] became irate and commenced what the trial court described as "an extended, animated, and profanity-laced speech in the presence of the jury in which he accused the prosecutor of lying and spoke at great length about his reputation as a businessman and contributor to the community." After [Alwan's] outburst, the trial court excused the jury. Defense counsel then moved for a mistrial, which the trial court denied. Because both the prosecution and the defense wanted to continue questioning [Alwan], the court permitted [Alwan] to retake the stand. [Alwan] answered the remainder of the questions posed to him without incident.

* * * *

[I]n August [] 2013, . . . a jury convicted [Alwan] of [s]econd-[d]egree [m]urder, [c]onspiracy, and [r]obbery. This Court immediately imposed a mandatory life sentence of imprisonment as to [s]econd-[d]egree [m]urder, and a concurrent term of ten to twenty years of imprisonment as to [c]onspiracy. [I]n November [] 2014, Superior Court affirmed his judgment of sentence. On October 22, 2015, the Pennsylvania Supreme Court denied his [p]etition for [a]llowance of [a]ppeal.

[I]n June [] 2016, [Alwan] filed a timely *. . .* [PCRA p]etition, his first. [The PCRA c]ourt dismissed the petition. [I]n April [] 2017[, Alwan] filed a subsequent *pro se* PCRA [p]etition, which th[e PCRA c]ourt dismissed . . . because [Alwan] was still represented by counsel. [Alwan appealed the dismissal of his first petition, and i]n June [] 2018, the Superior Court . . . affirmed

- 5 -

[the] dismissal. [I]n December [] 2018, the Pennsylvania Supreme Court denied his [p]etition for [a]llowance of [a]ppeal. [Alwan did not appeal the dismissal of his second *pro se* PCRA petition.]

On March 31, 2021, [Alwan] filed the instant, counseled PCRA petition, his third. . . .

* * * *

[Alwan] present[ed] two claims for review. First, [that] trial counsel was ineffective for failing to investigate co-defendant . . . Gray and discover a [previously proposed, but ultimately rejected,] cooperation agreement with the Commonwealth, in which it would recommend a more favorable sentence in exchange for Gray's cooperation as an eyewitness [against Matthew Bundy] in another [unrelated] homicide [("the **Bundy** matter")]. And second, that the Commonwealth withheld its [proposed] agreement with Gray from [Alwan] in violation of **Brady v. Maryland**, 373 U.S. 83 (1963) and **Giglio v. United States**, 405 U.S. 150 (1972).

* * * *

[A]fter hearing argument, th[e PCRA c]ourt issued its [n]otice of [i]ntent to [d]ismiss pursuant to Pa.R.Crim.P. 907[, in which it concluded, *inter alia*, that Alwan's issues are meritless and also that his petition is untimely]. . . . [Alwan] filed objections to th[e PCRA c]ourt's 907 [n]otice.

PCRA Court Opinion, 10/28/21, at 1-6 (internal citation and indentation omitted; paragraphs re-ordered for clarity; some emphasis added). The PCRA court dismissed Alwan's petition on October 28, 2021. Alwan timely appealed. The PCRA court did not order Alwan to file a concise statement of errors complained of pursuant to Pa.R.A.P. 1925(b). The PCRA court nevertheless filed a Rule 1925(a) opinion in support of its order.

Alwan raises the following issues for our review:

- 6 -

1. Is the PCRA court's dismissal of the properly filed PCRA petition free from legal error and supported by the record?

2. Does PCRA counsel's demonstrable ineffectiveness require remand to the PCRA court, where [Alwan] will be afforded effective assistance of counsel in PCRA proceedings, including but not limited to, PCRA amendment in accordance with Pa.R.Crim.P. 905 *et seq*[.]?

Alwan's Brief at 4 (unnecessary capitalization and italics omitted).[2]

Our standard of review of an order dismissing a PCRA petition is well-settled:

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

**Commonwealth v. Staton**, 184 A.3d 949, 954 (Pa. 2018) (internal citation and quotations omitted). Further, "there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." **Commonwealth v. Springer**, 961 A.2d 1262, 1264 (Pa. Super.

---

[2] Alwan's Pa.R.A.P. 2116 statement of questions involved includes two issues, one of which is a boilerplate invocation of this Court's standard of review, and the other which is a vague assertion that PCRA counsel for his most recent petition ("prior PCRA counsel"), who differs from Alwan's present counsel on PCRA appeal, was ineffective. While we disapprove of Alwan's vague statement of questions involved, we are nevertheless able to discern the substance of his arguments. Because this deficiency does not impede our ability to review his issues, we decline to find waiver.

2008) (internal citation, quotations, and brackets omitted). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." *Commonwealth v. Wholaver*, 177 A.3d 136, 144–45 (Pa. 2018) (internal citations omitted). Further, "it is well settled that this Court may affirm a valid judgment or order for any reason appearing as of record." *Id*. at 145 (internal citation omitted).

We must initially determine whether the PCRA court had jurisdiction over Alwan's petition. Under the PCRA, any petition "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S.A. § 9545(b)(1).[3] The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. *See Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010). Pennsylvania courts may nevertheless consider an untimely PCRA petition if the petitioner can plead and prove one of three exceptions set forth in section 9545(b)(1)(i)-(iii). To establish the governmental interference exception, pursuant to section 9545(b)(1)(i), a petitioner must plead and prove: (1) the failure to previously raise the claim was the result of interference by

---

[3] A judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

government officials, and (2) the petitioner could not have obtained the information earlier with the exercise of due diligence. **See Commonwealth v. Kennedy**, 266 A.3d 1128, 1135 (Pa. Super. 2021). Section 9545(b)(1)(ii) also provides an exception to the jurisdictional time-bar if "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S.A. § 9545(b)(1)(ii).[4] Any PCRA petition invoking an exception under section 9545(b)(1) "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

Here, our Supreme Court denied Alwan's petition for allowance of appeal on October 22, 2015, and he did not petition the United States Supreme Court for a writ of *certiorari*. Therefore, his judgment of sentence became final ninety days later, *i.e.*, on January 20, 2016. Accordingly, Alwan had until January 20, 2017 to file a timely PCRA petition. **See** 42 Pa.C.S.A. § 9545(b)(3); **see also Commonwealth v. Bankhead**, 217 A.3d 1245, 1247 (Pa. Super. 2019); U.S. Sup. Ct. R. 13.1. Alwan's present petition was thus facially untimely, as he concedes. **See** Alwan's Brief at 9. Alwan, however, alleged exceptions to the PCRA's timeliness requirement pursuant to section 9545(b)(1)(i) and (ii), *i.e.*, the governmental interference and newly

---

[4] The focus of this exception is on newly discovered facts, not on a newly discovered or newly willing source for previously known facts. **See Commonwealth v. Lopez**, 249 A.3d 993, 1000 (Pa. 2021).

discovered fact exceptions. ***See***, ***e.g.***, Alwan's Brief at 10. The Commonwealth conceded that Alwan's ***Brady***/***Giglio*** claim satisfied the newly discovered fact exception, and the PCRA court concluded the same. ***See*** Commonwealth's Motion to Dismiss, 6/9/21, at 9; ***see also*** PCRA Court Opinion, 10/28/21, at 9.[5] As there is no dispute that Alwan successfully pleaded a timeliness exception vis-à-vis his ***Brady*** claim, we will review this issue on the merits.

The PCRA court, however, determined that Alwan failed to allege a timeliness exception for his ineffectiveness claim, apparently because it did not perceive a nexus between the newly discovered fact and the claim of ineffectiveness, given its conclusion that Alwan's trial counsel could not, through the exercise of due diligence, have learned about this newly discovered fact, since it was contained solely in the Commonwealth's files.

_____

[5] In ***Brady***, the United States Supreme Court ruled that the suppression by the prosecution of evidence favorable to an accused upon request violated due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. ***See Brady***, 373 U.S. at 87. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, ***see United States v. Agurs***, 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as well as directly exculpatory evidence, ***see United States v. Bagley***, 473 U.S. 667, 676 (1985).

In ***Giglio v. United States***, 405 U.S. 150, 155 (1972), the United States Supreme Court held that "evidence of any ***understanding or agreement as to a future prosecution*** would be relevant to [a governmental witness's] credibility and the jury was entitled to know of it" (emphasis added).

***See*** PCRA Court Opinion, 10/28/21, at 7, 8-9. The Commonwealth additionally argues that an assertion of ineffectiveness does not constitute a newly discovered fact exception to the PCRA's timeliness requirement. ***See*** Commonwealth's Brief at 15 (citing, *inter alia*, ***Commonwealth v. Gamboa-Taylor***, 753 A.2d 780, 785 (Pa. 2000)). Alwan, however, maintains that his newly discovered fact is not trial counsel's ineffectiveness, but rather Gray's "involvement in the . . . ***Bundy*** matter" (emphasis added) and trial counsel's knowledge that Gray was involved in the ***Bundy*** matter. ***See*** Alwan's Brief at 12.

While it is true that "a claim for ineffective assistance of counsel does not save an otherwise untimely petition for review on the merits," ***see Gamboa-Taylor***, 753 A.2d at 785, a successfully pleaded newly discovered fact exception can invoke the PCRA court's jurisdiction over a variety of claims eligible for relief under the PCRA, including ineffective assistance of counsel. ***See***, ***e.g.***, ***Commonwealth v. Cox***, 146 A.3d 221, 226, 229, 230-31 (Pa. 2016) (holding that a newly discovered fact exception could be a basis for invoking the PCRA court's jurisdiction over an ineffectiveness claim in an otherwise untimely second PCRA petition, but ultimately concluding that the petitioner there failed to establish due diligence, and thereby failed to show

that the exception applied).[6]  As Alwan argues that his ineffectiveness claim is predicated on what the PCRA court already concluded was an unknown **fact**, *i.e.*, Gray's involvement in the **Bundy** matter—and because Alwan further asserts that he only subsequently learned that trial counsel knew of Gray's involvement in the **Bundy** matter—we conclude the PCRA court committed an error of law in determining this claim was untimely.  However, the PCRA court provided an alternative analysis on the merits.  **See** PCRA Court Opinion, 10/28/21, at 13-15.  Further, as noted above, "this Court may affirm a valid judgment or order for any reason appearing as of record," **Wholaver**, 177 A.3d at 144–45.  **Accord Commonwealth v. Parker**, 249 A.3d 590, 595 (Pa. Super. 2021) (providing that "this Court may affirm a PCRA court's order on any legal basis") (internal citation omitted).  Therefore, we review this issue on the merits, as well.

Our Supreme Court has stated the "well-settled" standard for ineffective assistance of counsel claims as follows:

> [C]ounsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness.  To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her

---

[6] In **Cox**, the petitioner raised several claims in an untimely second PCRA petition, including ineffective assistance of trial counsel for failing to seek independent ballistics testing.  **See** 146 A.3d at 225-226.  Cox, recognizing his petition was untimely, attempted to invoke the newly discovered facts exception.  Our Supreme Court did not hold that the ineffectiveness claim was barred in a subsequent and untimely PCRA petition; instead, it concluded that Cox had failed to plead diligence.  **See id**. at 231.

act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different. A PCRA petitioner must address each of these prongs on appeal. [A p]etitioner's failure to satisfy any prong of this test is fatal to the claim.

**Wholaver**, 177 A.3d at 144 (internal citations and quotations omitted).

Our Supreme Court has set forth the relevant **Brady** principles as follows:

The crux of the **Brady** rule is that due process is offended when the prosecution withholds material evidence favorable to the accused. The **Brady** rule extends to impeachment evidence including any potential understanding between the prosecution and a witness, because such information is relevant to the witness' credibility. To establish his alleged **Brady** violations, [a petitioner must] prove that the Commonwealth willfully or inadvertently suppressed impeachment evidence **and** that prejudice ensued.

Regarding the prejudice prong of this standard, favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In determining if a reasonable probability of a different outcome has been demonstrated, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. *The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense*.

*Id*. at 158–59 (internal citations, quotations, and brackets omitted; emphasis added).

- 13 -

Despite Alwan's vagueness in his statement of questions involved, we discern that the substance of his argument is as follows: The PCRA court erred in dismissing his petition because, having properly pleaded timeliness exceptions pursuant to 42 Pa.C.S.A. § 9545(b)(1)(i), (ii), thereby invoking the PCRA court's jurisdiction over his petition, Alwan was entitled to an evidentiary hearing on his meritorious issues, namely, that the Commonwealth committed a *Brady*/*Giglio* violation, and that trial counsel was ineffective. Both of these issues arise from a common fact, namely, a negotiated plea offer that Gray had rejected, which was twenty-five to fifty years of incarceration, contingent on his cooperation with the Commonwealth, not just against Harville and Alwan, but also in the *Bundy* matter. The Commonwealth declined to disclose this rejected offer prior to Alwan's trial (giving rise to Alwan's *Brady* issue), and trial counsel did not impeach Gray with the rejected offer at Alwan's trial (giving rise to Alwan's ineffectiveness issue). *See* Alwan's Brief at 12-15. Alwan further maintains this Court should remand this case based on prior PCRA counsel's ineffectiveness, because the PCRA court "summarily dismissed as meritless" his petition on account of PCRA counsel's failure to attach witness certifications required by 42 Pa.C.S.A. § 9545(d)(1). *See* Alwan's Brief at 15-17.

The PCRA court considered Alwan's issues and concluded they merit no relief because his *Brady* claim, while timely, is meritless, and his trial counsel

claim of ineffectiveness is untimely, but, even if timely, it is also meritless

because he has failed to demonstrate prejudice:

> The factual predicate for [Alwan's] ***Giglio*** claim extends from his review of the Commonwealth's [file], which yielded documentation of the extent of the Commonwealth's negotiations with Gray. Gray was the Commonwealth's witness in an unrelated homicide matter, ***Commonwealth v. Bundy*** . . . in addition to being a cooperating co-defendant in the instant matter. Prosecutors also placed a wanted poster for Matthew Bundy, one of the defendants in ***Commonwealth v. Bundy*** . . ., in the homicide file. Gray rejected that offer and the Commonwealth did not disclose this previous offer to [Alwan]. Initially, the Commonwealth extended a recommended sentencing offer of twenty-five to fifty years imprisonment in exchange for Gray's cooperation in both the instant homicide and the ***Bundy*** matter, which Gray rejected. [Alwan] did not discover this offer until he reviewed the [Commonwealth's] file on October 30, 2020. . . ..

> . . . Despite the timeliness of [Alwan's] claim that the Commonwealth violated ***Brady*** and ***Giglio,*** it is meritless. . . . For a petitioner to prove a ***Brady*** violation, [he] must show: (1) the prosecution was in possession of favorable evidence to the petitioner, either exculpatory or impeaching; (2) the prosecution suppressed that evidence; and[] (3) the petitioner was prejudiced by this suppression. ***Commonwealth v. Donoughe***, 243 A.3d 980 (Pa. Super. 2020).

> \* \* \* \*

> Ultimately, Gray entered into an open plea of guilty to third-degree murder, conspiracy to commit murder, [possessing an instrument of crime], and robbery in exchange for testifying against his co-defendants in the underlying matter *sub judice,* not [in the] ***Bundy*** [matter]*.* Gray's sentencing was deferred until after the trial of [Alwan] and co-defendant Harville, pending Gray's testimony. However, despite his negotiations with the Commonwealth, Gray reneged on his bargain and gave contradictory testimony at both trials, which differed from his statements to police officers. At [Gray's] sentencing, . . . the [trial court] sentenced Gray to an aggregate term of imprisonment of

thirty-five to seventy years, finding his "cooperation" as having limited effect on mitigation.

. . . [F]or a promise or agreement to warrant a **Brady** disclosure such an arrangement must actually exist, as mere conjecture of an agreement is not sufficient. . . ..

The earlier communicated offer of twenty-five to fifty years of imprisonment in exchange for Gray's cooperation did not need to be disclosed pursuant to **Giglio**, because there was no agreement to disclose. The Commonwealth's offer is not a promise triggering a **Brady** disclosure until the witness accepts; otherwise, it is just what it purports to be—an offer. The Commonwealth did disclose its eventual agreement with Gray to [Alwan] in this matter, and Gray was thoroughly cross-examined by trial [counsel] on this subject. Accordingly, [Alwan's] claim fails.

\* \* \* \*

[Regarding Alwan's trial counsel ineffectiveness claim:] There was no deal in the **Bundy** matter on which trial counsel could cross-examine Gray. For that reason alone, trial counsel would be unable to question Gray on that basis, and such questions would be irrelevant. . . . Because there is no basis on which trial counsel could cross-examine Gray, [Alwan's] claim fails.

PCRA Court Opinion, 10/28/21, at 7-13 (some quotations, italics, and unnecessary capitalization omitted; some emphasis added).

Following our review, we conclude the PCRA court's findings are supported by the record and its legal conclusions are free from error. The gravamen of both Alwan's trial counsel ineffectiveness and **Brady** claims is that he suffered prejudice because evidence of the failed negotiations between Gray and the Commonwealth, relating to the **Bundy** matter, were not presented to the jury. **See** PCRA Petition, 4/8/22, at 15; **accord** Alwan's Brief at 13 (stating that the evidence of "extensive negotiations with Gray. . . [was]

potentially exculpatory information . . .. Had Gray's involvement in an additional investigation . . . and [his] secretive negotiations with the Commonwealth come to light at trial, the credibility of his statements would have been further called into question"). While Alwan presents conclusory allegations of prejudice, he fails to show anything more than the mere possibility that this information might have helped the defense. We explain: The PCRA court astutely pointed out that there was no agreement between the Commonwealth and Gray for his testimony in the *Bundy* matter. The Commonwealth offered Gray a negotiated sentence of twenty-five to fifty years of incarceration, contingent on his cooperation with the Commonwealth's prosecution of Harville and Alwan, as well as with the *Bundy* matter. *See* PCRA Petition, 4/8/22, at 9 (reproducing internal communications between prosecutors about the terms of the offer). It is uncontested that Gray did not accept this offer.[7] Instead, Gray and the Commonwealth negotiated an agreement as to the charges to which Gray would plead guilty. *See* N.T., 8/14/13, at 164. There was no agreement for a recommendation as to his sentence. *See id*. at 166. The agreement required Gray's cooperation against Harville and Alwan. *See id*. at 181. *See also* PCRA Petition, 4/8/22, at Ex. 1 (Gray's Memorandum of Agreement memorializing the plea agreement, executed by the Commonwealth and

---

[7] Alwan conceded in his PCRA petition that Gray refused to testify in the *Bundy* matter. *See* PCRA Petition, 4/8/22, at 11-12.

Gray).  The terms of this agreement were presented to the jury.  ***See*** N.T., 8/14/13, at 164, 166, 181.  Further, on cross-examination, Alwan's trial counsel impeached Gray by eliciting the latter's agreement that "the more people you give up, the better you're going to do for yourself," and that "the more people you stick in it, whether they did it or not, the better of you're going to be, right?"  N.T., 8/14/13, at 268.  Notwithstanding Gray's perception that he would benefit from cooperating with the Commonwealth, it is undisputed that Gray "reneged on his bargain and gave contradictory testimony at both trials, [*i.e.*, at Harville's and Alwan's trials,] which differed from his statements to police officers."  PCRA Court Opinion, 10/28/21, at 11.

In sum: while the Commonwealth proposed a twenty-five to fifty year negotiated plea offer which would require Gray to cooperate in the ***Bundy*** matter, Gray declined that offer.[8]  At Alwan's trial, Gray agreed on cross-examination that he understood he would benefit from "giv[ing] up" others; however, there is no evidence that Gray ever accepted an offer requiring his cooperation in the ***Bundy*** matter; moreover, the jury was presented with the terms of the negotiated plea agreement Gray actually accepted, which he nevertheless failed to abide by.  Alwan has thus failed to show there was a

---

[8] Gray rejected the twenty-five to fifty-year offer that would have required his cooperation in the ***Bundy*** matter.  There was, therefore, no understanding or agreement between the Commonwealth and Gray vis-à-vis the ***Bundy*** matter.  Therefore, ***Giglio*** is inapplicable.  ***Contra*** Alwan's Brief at 15.  We further observe that Gray received a sentence of thirty-five to seventy years of incarceration.  ***See***, ***e.g.***, PCRA Court Opinion, 10/28/21, at 11.

promise, agreement, or expectation between Gray and the Commonwealth involving the *Bundy* matter, and, accordingly, there was nothing, in this respect, about which trial counsel could cross-examine Gray. Thus, for purposes of Alwan's ineffectiveness issue, he has failed to show that there is a reasonable probability that the outcome of his trial would have been different had trial counsel cross-examined Gray about the negotiations surrounding this rejected plea offer. *See Wholaver*, 177 A.3d at 144 (stating that a PCRA petitioner alleging ineffective assistance of counsel must show prejudice and that failure to do so is fatal to the claim). For purposes of Alwan's *Brady* issue, Alwan has failed to show that the undisclosed information about Gray's rejected plea offer was material and that he did not receive a fair trial in its absence. *See Wholaver*, 177 A.3d at 158–59 (providing that, for *Brady* claims, the question relevant question is whether, in the absence of the undisclosed evidence, the petitioner "received a fair trial, understood as a trial resulting in a verdict worthy of confidence. The mere possibility that an item of undisclosed information might have helped the defense . . ., does not establish materiality in the constitutional sense") (internal citations and quotations omitted). Alwan has thus failed to show there was a genuine issue of material fact requiring an evidentiary hearing, and, therefore, the PCRA court properly dismissed his petition. Accordingly, Alwan is due no relief.

Lastly, Alwan filed an application with this Court for a remand of this case to the PCRA court based on his allegation that prior PCRA counsel was

ineffective for failing to provide witness certifications, which, Alwan alleges, led to the dismissal of his meritorious petition. *See* Application, 3/16/22; *accord* Alwan's Brief at 13, 16-17 (presenting argument in support of a remand).[9] Alwan cites our Supreme Court's decision in ***Commonwealth v. Bradley***, 261 A.3d 381 (Pa. 2021).

PCRA petitioners may raise claims of ineffective assistance of PCRA counsel "for the first time during an appeal from the denial of a ***timely filed first PCRA petition*** where the PCRA counsel in question represented the defendant until the appeal." ***Commonwealth v. Stahl***, --- A.3d ----, 2023 PA Super 17, 2023 WL 1793571 at *3 (Pa. Super. Feb. 7, 2023) (citing ***Bradley***, 261 A.3d at 401-05) (emphasis added). Our Supreme Court has provided that, "[i]n some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims," though, "in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter." ***Bradley***, 261 A.3d at 402 (internal citation omitted).

Following our review, we conclude Alwan is due no relief. As this Court has recently stated: pursuant to ***Bradley***, PCRA petitioners may raise claims

---

[9] We previously deferred a decision on Alwan's application. *See* Order, 4/25/22.

of ineffective assistance of PCRA counsel "for the first time during an appeal from the denial of a **_timely filed first PCRA petition_** where the PCRA counsel in question represented the defendant until the appeal." **_Stahl_**, 2023 PA Super 17, 2023 WL 1793571 at *3 (emphasis added). However, **_Bradley_** is inapplicable because the instant petition was not a timely-filed first PCRA petition. We further observe that, even if **_Bradley_** applied, Alwan's issue merits no relief.[10] The PCRA court explained that, while prior PCRA counsel failed to include witness certifications, ultimately, it concluded that Alwan's petition failed "to allege any issues of material fact," and, therefore, any certifications in support thereof would not entitle Alwan to an evidentiary hearing. **_See_** PCRA Court Opinion, 10/28/21, at 11. Thus, Alwan has failed to show prejudice resulting from prior PCRA counsel's failure to obtain witness certifications, and therefore prior PCRA counsel was not ineffective, and a remand is unnecessary.

Application denied. Order affirmed.

Judge Nichols joins this memorandum.

Judge Stabile concurs in the result.

---

[10] As noted above, we need not remand a **_Bradley_** claim if the record is sufficient for us to dispose of the newly asserted claim. **_See Bradley_**, 261 A.3d at 402.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/14/2023</u>