J-S49043-20

2020 PA Super 288

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                          :              PENNSYLVANIA
                                            :
                 v.                      :
                                            :
                                            :
MICHAEL D. DONOUGHE           :
                                            :
            Appellant            :      No. 639 WDA 2020

Appeal from the Judgment of Sentence Entered June 19, 2020
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0003947-2016

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                FILED DECEMBER 18, 2020

      Appellant, Michael D. Donoughe, appeals from the judgment of sentence entered in the Court of Common Pleas of Westmoreland County, which, sitting as finder of fact in his non-jury trial, found him guilty of both counts of Driving Under the Influence of Alcohol or Controlled Substance ("DUI"), 75 Pa.C.S.A. § 3802(a)(1), and (a)(2), and one count of summary Maximum Speed Limits, 75 Pa.C.S.A. § 3362(a)(2).[1]  Herein, Appellant contends the court erred in denying his pretrial Motion to Dismiss raising a Brady[2] claim centered on the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The court found Appellant not guilty of one count of summary Careless Driving, 75 Pa.C.S.A. § 3714(a).

[2] Brady v. Maryland, 373 U.S. 83 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

failure of the Pennsylvania State Police to preserve a Mobile Video Recording ("MVR") of Appellant's traffic stop, and he raises a challenge to the sufficiency of DUI-General Impairment evidence. We affirm.

On April 17, 2016, at approximately 1:30 a.m., Pennsylvania State Police Troopers Nicholas Loughner and Brian Hupe were on midnight shift patrol, driving along Pennsylvania State Route 30 in Unity Township, when they noticed Appellant's blue Jeep Cherokee traveling at a high rate of speed. N.T., 1/6/2020, at 7-8. Trooper Lougher initiated pursuit and reached a speed of 94 miles per hour ("mph") at one point to maintain contact with Appellant. N.T. at 8. The trooper then used the speedometer on his patrol car to "clock" Appellant's speed of travel at 87 mph for well over three-tenths of a mile in a 55 mile per hour zone of Route 30. Id.

Trooper Loughner activated the overhead lights of the patrol car and conducted a traffic stop of Appellant's jeep in an adjacent store parking lot. N.T. at 13. At that time, the dashcam located in Trooper Loughner's patrol car automatically initiated an MVR capturing the police/citizen interaction that ensued. N.T. at 22.

Upon reaching the driver's side window, the trooper detected a strong odor of alcohol emanating from both the jeep and Appellant's breath. Id. While speaking with Appellant and requesting his documents, the trooper noticed Appellant's eyes were bloodshot and glassy and his movements were very slow. From his vantage point, the trooper also could see a case of unopened beer on the back seat. When the trooper asked how much Appellant

- 2 -

had been drinking that evening, Appellant answered that he had two beers prior to driving.  N.T. at 13-15, 28.

Trooper Loughner ordered Appellant to exit his jeep in order to undergo a field sobriety test.  Because of the combination of Appellant's height and weight,[3] however, the trooper determined it would have been unfair to administer the full set of physical performance tests, so he conducted only a horizontal gaze nystagmus and a portable breath test.  On the basis of such tests, along with his previous observations, he arrested Appellant for DUI and transported him to Greensburg Barracks for a legal breath test, which registered a .107% BAC.  N.T. at 15-17, 41. [4]

Charged with DUI, Careless Driving, and Maximum Speed Limits, as noted supra, Appellant was accepted into the Westmoreland County Accelerated Rehabilitative Disposition ("ARD"), program, and his charges were held in abeyance.  On October 24, 2017, however, the trial court ordered Appellant's removal from the ARD program on evidence that he had violated the terms of his ARD sentence by failing to complete highway safety school, drug and alcohol treatment, and to report to Adult Probation as required.

_____

[3] Appellant stood 5'6" and weighed approximately 230 pounds.  N.T. at 30-31.

[4] As part of his post-arrest paperwork routine, Trooper Loughner requested a DVD be made from the MVR footage in anticipation of trial.  N.T. at 45-46.

Criminal charges were refiled and a non-jury trial date was scheduled. Appellant requested discovery, including the MVR footage of his traffic stop, but the Commonwealth notified both the court and the defense that, pursuant to Pennsylvania State Police policy existing at the time,[5] the DVD was destroyed on April 3, 2017, approximately five months after Appellant had entered the fast track DUI/ARD program. N.T. at 46-47.

On September 10, 2018, Appellant filed an omnibus pre-trial motion to dismiss the two DUI counts on grounds the "potentially exculpatory MVR footage" represented critical evidence necessary to preparing a proper defense. Appellant's Pre-trial Motion, 9/10/18, at 7. On March 7, 2019, the trial court entered its order and opinion denying Appellant's motion.[6]

Specifically, the court acknowledged that the unavailability of the MVR footage precluded Appellant from meeting his obligation under Brady to establish that the evidence at issue is materially exculpatory or impeaching. Therefore, it turned to the alternate due process analysis applicable to "potentially useful" destroyed evidence, which recognizes a constitutional violation only where such evidence was destroyed in bad faith. See

_____

[5] The policy called for disposal of MVR recordings 90 days after a defendant's acceptance into the ARD program. N.T. at 47.

[6] In the alternative, Appellant filed a motion in limine seeking preclusion of BAC evidence at trial given the unavailability of the MVR footage. The court denied this motion as well.

California v. Trombetta, 467 U.S. 479 (1984),[7] Commonwealth v. Snyder, 963 A.2d 396, 404 (Pa. 2009) (acknowledging bad faith requirement where evidence is potentially useful rather than materially exculpatory or impeaching). Because there was no dispute that the Pennsylvania State Police in this case had acted not in bad faith but, instead, in obedience to an established policy applicable to defendants accepted into ARD, the trial court denied Appellant's motion.

As noted supra, Appellant's non-jury trial ended with guilty verdicts on the two DUI charges and a summary speeding charge. The court acquitted Appellant on one count of Careless Driving, 75 Pa.C.S.A. § 3714(a). After the denial of Appellant's post-sentence motions, this timely appeal followed.

Appellant raises two issues for this Court's consideration:

1. [Did the trial court abuse its] discretion and err[], on March 6, 2019, by denying Appellant's omnibus pretrial motion and trial arumnets [sic] challenging the counts of Driving Under the Influence as a result of the Commonwealth's spoliation of evidence which violated his due process rights under the Pennsylvania and United States Constitutions?

2. [Did the trial court abuse its] discretion and err[] in finding the trial evidence was sufficient to convict Appellant?

Appellant's brief, at 7.

_____

[7] To satisfy the Trombetta standard, the defendant must show the evidence "both possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 488-89.

In his first issue, Appellant contends the Commonwealth violated his rights under Brady when it could not provide him with a DVD containing the MVR footage of his traffic stop. Appellant's brief, at 13. Without pointing to any supporting evidence, and in an apparent attempt to avoid the burden of proving bad faith on the part of the State Police, Appellant asserts baldly that he "believes the MVR footage of his arrest to be exculpatory [and] material[, such that its] omission resulted in prejudice and violated [the] due process clauses of the Pennsylvania and U.S. Constitutions. Appellant's brief, at 14.

Rulings on allegations of discovery violations are reviewed under an abuse of discretion standard. Commonwealth v. Spotti, 94 A.3d 367, 382-38 (Pa. Super. 2014). When considering a Brady claim in this regard, we must bear in mind the following:

> A Brady violation comprises three elements: 1) suppression by the prosecution 2) of evidence, whether exculpatory or impeaching, favorable to the defendant, [and] 3) to the prejudice of the defendant." Commonwealth v. Paddy, 800 A.2d 294, 305 (Pa. 2002). Furthermore, "[w]hen the [Commonwealth] fails to preserve evidence that is 'potentially useful,' there is no federal due process violation 'unless a criminal defendant can show bad faith on the part of the police.'"

Commonwealth v. Chamberlain, 30 A.3d 381, 402 (Pa. 2011), quoting Arizona v. Youngblood, 488 U.S. 51, 58 (1988), cert. denied, 566 U.S. 986 (2012). Moreover, this Court has held that "the Pennsylvania Constitution provides no more due process than does the U.S. Constitution in the context of lost evidence." Commonwealth v. Coon, 26 A.3d 1159, 1163 (Pa.Super. 2011).

After a thorough review of the record, the parties' briefs, and the relevant statutory and case law, we find the trial court aptly addressed and properly disposed of Appellant's pretrial Brady motion seeking to dismiss his DUI charges on grounds the State Police destroyed the MVR footage in question. As discussed, supra, Appellant failed to make the required showing of bad faith on the part of the State Police with regard to its disposal of what may only be fairly characterized as "potentially useful" evidence to the defense.

Appellant fails to submit any reason to conclude the MVR footage was exculpatory, and there is no dispute the Pennsylvania State Police did not act in bad faith. Accordingly, we conclude he is entitled to no relief on this issue.

In Appellant's remaining claim, he assails the sufficiency of the evidence pertaining to his DUI conviction under Section 3802(a)(1), General Impairment. Our standard of review for such a claim is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted) (emphasis added).

Section 3802(a)(1) of the Motor Vehicle Code provides:

(a) General impairment.

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1).

With regard to the proof necessary to sustain a conviction under section 3802(a)(1), we have previously stated that:

the Commonwealth must show: (1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render him incapable of safe driving.  To establish the second element, the Commonwealth must show that alcohol has

substantially impaired the normal mental and physical faculties required to safely operate the vehicle. Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions.  Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving.

Commonwealth v. Gause, 164 A.3d 532, 541 (Pa. Super. 2017) (en banc) (citations omitted).  See also Commonwealth v. Segida, 985 A.2d 871, 879 (Pa. 2009) (holding types of evidence the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include, inter alia, the offender's manner

of driving and ability to pass field sobriety tests, physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech).

Appellant argues that Trooper Loughner's testimony that he smelled a strong odor of alcohol on Appellant's breath was insufficient to support his conviction for general impairment under Section 3802(a)(1), particularly where the trooper "did not give a reading of a PBT," and did not administer a field sobriety test based on Appellant's combination of relatively short stature and heavy weight. Appellant's brief, at 16.

As a threshold matter, we find Appellant has waived this claim for his failure to develop a meaningful argument supported by citation to relevant authority. Specifically, Appellant cites to no decisional or statutory law supporting his bare claim that an investigating officer's observations of physical signs of intoxication are insufficient to prove general impairment beyond a reasonable doubt. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." Commonwealth v. Johnson, 985 A.2d 915, 924 (Pa. 2009). It is not the role of this Court to "formulate [an a]ppellant's arguments for him." Id. at 925. For this reason, Appellant's sufficiency claim is waived.[8]

_____

[8] Even if we were to address Appellant's sufficiency claim on the merits, we would find the record belies his claims. Trooper Loughner testified he

For the foregoing reasons, judgment of sentence is affirmed.

Judge Dubow joins the Opinion.

Judge Olson Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/18/2020

_____

observed numerous indications that Appellant was intoxicated, including strong odor of alcohol, bloodshot and glassy eyes, very slow movements inside the car as Appellant procured his papers for the trooper's inspection, and a horizontal gaze nystagmus presentation consistent with impairment.  Such evidence sufficed to prove the DUI-General Impairment charge beyond a reasonable doubt.  See Gause, supra.

Received 7/15/2020 2:36:15 PM Superior Court Western District

Filed 7/15/2020 2:36:15 PM Superior Court Western District
639 WDA 2020

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY
COMMONWEALTH OF PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,    )
                                 )
v.                               )        No.: 3947 C 2016
                                 )
MICHAEL DAVID DONOUGHE,          )
                 Defendant.      )

## OPINION AND ORDER OF COURT

Krieger, J.                                             March 6, 2019

Defendant Michael Donough is charged with two counts of Driving Under the Influence
of Alcohol or Controlled Substance, and one count each of Exceeding Maximum Speed Limits
and Careless Driving.[1] These charges arise from allegations that on April 17, 2016, at
approximately 1:30 in the morning, the Defendant was driving 87 miles per hour in a 55 mile per
hour zone of State Route 30 in Unity Township while under the influence of alcohol. On August
15, 2016, the Defendant waived his preliminary hearing and entered into a Tentative Fast Track
DUI ARD Agreement with the Commonwealth. The Defendant was accepted into the ARD
Program by Order of Court dated October 18, 2016. On October 24, 2017, however, the
Commonwealth petitioned to revoke the Defendant from the ARD Program for his failure to
complete alcohol highway safety school, drug and alcohol treatment, and to report to the Adult
Probation Office since the date of his entry in the ARD Program. Following a hearing, the
Defendant was found in violation of the terms of his ARD sentence and he was revoked from the
Program by Order dated April 17, 2018. Thereafter, the Commonwealth filed its Information for
the above charges, the Defendant filed a Request for Informal Discovery, and a non-jury trial
was scheduled for August 24, 2018.

At the time set for the non-jury trial, defense counsel orally motioned for dismissal of the
DUI charges because the arresting officer's motor vehicle recording (MVR) footage of the traffic
stop was not provided through discovery and was, in fact, destroyed after the Defendant entered
the ARD Program. A continuance was granted to allow the defense to formally raise and brief
its motion and to allow the Commonwealth to respond. On September 10th, the Defendant filed

---

[1] These offenses are respectively found at 75 Pa.C.S.A. § § 3802(a)(1) (general impairment), 3802(b) (high rate of
alcohol), § 3362(a)(2) and § 3714(a).

his Omnibus Pre-Trial Motion ("Omnibus Motion"), seeking dismissal of the two DUI counts on the grounds that the MVR footage was exculpatory evidence, "so critical to preparing a defense that proceeding with a criminal trial is fundamentally unfair," and violates the Defendant's due process rights regardless of the Commonwealth's good or bad faith in its destruction. (Id. at 6-7). The Defendant seeks dismissal pursuant the Pa.R.Crim.P. 573 and the due process clauses of our state and federal constitutions.[2] For support, the Defendant relies on Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, particularly, Com. v. Simmons, 804 A.2d 625 (Pa. 2001).

In response, the Commonwealth contends that because the MVR footage was destroyed pursuant to the Greensburg State Police Barracks' ("Greensburg PSP") policy to erase MVR videos ninety (90) days after a defendant enters the ARD Program, the footage cannot be shown to be exculpatory, only potentially useful, and thus warrants dismissal only if it was destroyed in bad faith. (Cmwlth's Mem. Opp'n 4, Sept. 25, 2018), *citing* Com. v. Snyder, 963 A.2d 396 (Pa. 2009) and Illinois v. Fisher, 540 U.S. 544 (2004). The Commonwealth contends bad faith cannot be shown in this case where the MVR footage was destroyed pursuant to an established policy. (Id.), *citing* Com. v. Williams, 154 A.3d 336 (Pa. Super. 2017).

Upon the request of the Defendant, a hearing on his Omnibus Motion was held before the Court on January 7, 2019, at which time neither party presented any evidence, but the parties agreed, as they did in their pleadings/briefs, that the MVR footage was destroyed pursuant to Greensburg PSP's 90-day policy.

## Applicable Law

It is clear upon review of the relevant state and federal case law that Defendant's claim for dismissal based upon Greensburg PSP's destruction of the MVR footage implicates the Defendant's due process rights and more specifically "what might loosely be called the area of constitutionally guaranteed access to evidence." Snyder, *supra* at 664, *citing* Arizona v. Youngblood, 488 U.S. 51, 55 (1988). This carved out area of constitutional protection has its origins in the case of Maryland v. Brady, 373 U.S. 83 (1963), wherein the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon

---

[2] Defendant's Omnibus Motion also seeks suppression of his blood draw test results as relief from the destruction of the MVR footage in violation of Brady. Of note, however, the Defendant in no way ties the substance of the MVR footage, or the prejudice to him from its destruction, to the inadmissibility or suppression of his blood draw results. Notwithstanding, since the Defendant's claimed basis for suppression is the same as for dismissal, both are resolved by the discussion and Order below.

2

request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. Based upon Brady and its progeny, a *Brady* violation has three component parts: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Com. v. Natividad, No. 743 CAP, 2019 WL 286564, at *11 (Pa. Jan. 23, 2019).[3] In order to prove that evidence is materially exculpatory or impeaching, our courts have "required support for [the] allegation . . . holding it cannot be based on a 'mere assertion.'" Snyder, *supra* at 405; *see also*, Com. v. Willis, 46 A.3d 648, 670 (Pa. 2012) ("'mere speculation' by a defendant will not be sufficient to meet this burden.").

Based on this burden of proof, in circumstances as in the present case where evidence has been destroyed by the state prior to a Defendant's opportunity to examine it, the Defendant is rendered unable to show that the evidence is materially exculpatory or impeaching. Arizona v. Youngblood, 488 U.S. 51, 68–69 (1988) (J. Stevens concurring). As a result, federal due process law has developed "another category of constitutionally guaranteed access to evidence, which involves evidence that is not materially exculpatory, but is potentially useful." Com. v. Chamberlain, 30 A.3d 381, 402 (Pa. 2011). This category of federal due process protection was first recognized by the U.S. Supreme Court in California v. Trombetta, 467 U.S. 479 (1984). In Trombetta, the Supreme Court explained that in order for destroyed evidence to satisfy the standard of constitutional materiality and thus warrant protection, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 488–89.[4] Since Trombetta however, the Supreme Court has narrowed

---

[3] *See also*, Com. v. Willis, 616 Pa. 48, 84, 46 A.3d 648, 670 (2012) ("[N]ondisclosed favorable evidence which is not admissible at trial may nonetheless be considered material for *Brady* purposes where the Commonwealth's failure to disclose such evidence adversely affected the presentation of the defense at trial, or the defense's preparation for trial, such that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."); Natividad, *supra* at *11 ("[A] defendant need only show that the favorable evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict"); and, Com. v. Haskins, 60 A.3d 538, 547 (Pa. Super. 2012) ("To prove materiality where the undisclosed evidence affects a witness' credibility, a defendant 'must demonstrate that the reliability of the witness may well be determinative of [the defendant's] guilt or innocence.'").

[4] In Trombetta, the Supreme Court's reasoning and analysis for denying constitutional protection was actually threefold: "first, the officers . . . were acting in good faith and in accord with their normal practice; second, in the light of the procedures actually used the chances that [the destroyed evidence] would have exculpated the defendants were slim; and, third, even if the [evidence] might have shown inaccuracy in the [state's previously conducted] tests,

3.

its federal due process analysis and held that failure to preserve potentially useful evidence does not violate due process *"unless a criminal defendant can show bad faith on the part of the police."* Illinois v. Fisher, 540 U.S. 544, 547–48 (2004). Thus, under federal due process jurisprudence, whether unpreserved evidence "provides a defendant's only hope for exoneration [or] is essential to and determinative of the outcome of the case," is not a relevant consideration. Snyder, *supra* at 669.[5] Instead, if destroyed evidence can only be shown to be potentially useful, a federal due process violation only occurs if the evidence was destroyed in bad faith.[6] Id.

Finally, relative to the Defendant's claim for relief under Pennsylvania Rule of Criminal Procedure 573, our courts have held that "Rule 573 does not . . . limit the Commonwealth's duty to provide discovery pursuant to *Brady* . . . and its progeny." Com. v. Maldonodo, 173 A.3d 769, 774 (Pa. Super. 2017), appeal denied, 182 A.3d 991 (Pa. 2018). Additionally, while the *Brady* rule described above has been specifically incorporated into subsection (B)(1)(a) of Rule 573, "the rule imposes greater obligations upon prosecutors than the *Brady* requirements," in its other subsections. Id. "For instance, (B)(1)(b) requires production of a defendant's written confession," and (B)(1)(g) requires production of recordings of any electronic surveillance upon the Defendant's request. Id. However, in assessing whether a particular discovery sanction is justified in a particular case, our courts have frequently analyzed the scope of a Defendant's constitutional guarantees to access and preservation of evidence as provided by Brady and its progeny. Id., *citing* Com. v. Robinson, 122 A.3d 367 (Pa. Super. 2015).

## Conclusion

Guided by the foregoing understanding of the law, the Court must conclude that the destroyed MVR footage of the Defendant's pull-over and arrest is only potentially useful evidence since the Defendant merely asserted that it "may well be exculpatory," and did not

---

the defendants had alternative means of demonstrating their innocence." Arizona v. Youngblood, 488 U.S. 51, 56 (1988) (cleaned up).
[5] The Superior Court has held that "the Pennsylvania Constitution provides no more due process than does the U.S. Constitution in the context of lost evidence." Com. v. Coon, 26 A.3d 1159, 1163 (2011). However, the Court notes that the Superior Court held that our state and federal due process rights were coextensive when Trombetta was controlling federal precedence, and bad-faith was not the sole consideration. *See* Com. v. Free, 902 A.2d 565, 569 (Pa. Super. 2006) and Com. v. Gamber, 506 A.2d 1324, 1327 (Pa. Super. 1986). Regardless, however, the Defendant presented no evidence to establish his entitlement to relief under the Trombetta standard, as he never proffered what the lost MVR recording might show, or how it could aid in demonstrating his innocence.
[6] "The term 'bad faith' has been defined as 'not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of ... moral obliquity....' "Obliquity" involves a "deviation from moral rectitude or sound thinking." Com. v. Brown, 708 A.2d 81, 85 (Pa. 1998) (internal citations omitted).

4

present any evidence to establish its substance or materiality. (Deft.'s Omnibus Mot. ¶ 21). As such, the Defendant had to show that Greensburg PSP destroyed the MVR footage in bad faith. However, the Defendant presented no evidence purporting to show that Greensburg PSP or any of its troopers consciously engaged in wrongful conduct in destroying the MVR footage. Instead, the only evidence submitted for the Court's consideration upon the agreement of the parties was that the evidence was destroyed in rote obedience to a Greensburg PSP policy. The Defendant made no argument or assertion that the policy itself, as written, constitutes bad-faith conduct. *See* Com. v. Feese, 79 A.3d 1101, 1109 (Pa. Super. 2013) ("Notably, Appellant does not claim that the policy, as written, violates the *Brady* rule and its progeny"). Thus, the Court concludes that the Defendant failed to meet his burden of demonstrating that the Commonwealth destroyed the MVR footage in bad faith.

Relative to the Defendant's claim for relief pursuant to Pa.R.Crim.P. 573, the Court concludes that the Commonwealth violated its mandatory discovery obligations by failing to produce the MVR footage upon the Defendant's timely discovery request following his expulsion from the ARD Program. *See* Pa.R.Crim.P. 314, 560 and 573(B)(1)(g). However, the Court finds that the Defendant's requested relief of dismissal is not warranted in light of the circumstances, and particularly in light of his failure to make some minimal showing of the materiality of the lost evidence to his defense or to otherwise explain the extent to which he may have has been prejudiced by the MVR footage's destruction. Instead, justice can be better served at the time of trial by the fact-finder's discretion to infer that the destroyed evidence would have been unfavorable to the Commonwealth. *See* Standard Criminal Jury Instruction 3.21B – Failure to Produce Tangible Evidence.

Accordingly, the Court enters the following Order:

5

# IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY
## COMMONWEALTH OF PENNSYLVANIA
### CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,  )
  )
  v.              )     No.: 3947 C 2016
  )
MICHAEL DAVID DONOUGHE,  )
        Defendant.  )

## ORDER OF COURT

AND NOW, to wit, this 6th day of March, 2019, upon consideration of Defendant's Omnibus Pre-Trial Motion, filed on September 10, 2018, it is hereby ORDERED, ADJUDGED and DECREED that the motion is **DENIED.**.

**BY THE COURT:**

_Ty a. Krieger_
Timothy J. Krieger, Judge

cc:  Gregory L. Cecchetti, Counsel for Defendant – 2 N. Main Street, Ste. 404, Greensburg, PA 15601
     Rebecca L. Calisti, Assistant District Attorney – 2 N. Main Street, Ste. 206, Greensburg, PA 15601
     Pamela Neiderhiser, Esquire, Criminal Court Administrator