J-S42005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENNETH WAYNE HUNTER | : | |
| | : | |
| Appellant | : | No. 204 MDA 2025 |

Appeal from the Judgment of Sentence Entered February 12, 2025
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-SA-0000143-2024

BEFORE: OLSON, J., KING, J., and LANE, J.
MEMORANDUM BY OLSON, J.:       **FILED: APRIL 1, 2026**

Appellant, Kenneth Wayne Hunter, appeals *pro se* from the February 12, 2025 judgment of sentence entered in the Court of Common Pleas of Dauphin County after Appellant was convicted, in a non-jury trial, of operating his motor vehicle at a speed in excess of the maximum speed limit of 55 miles-per-hour ("mph").[1] The trial court ordered Appellant to pay a fine of $67.00. We affirm.

The trial court summarized the factual and procedural history as follows:

On the afternoon of February 25, 2024, Trooper John Thomas [("Trooper Thomas")] of the Pennsylvania State Police was patrolling traffic on Interstate 81 in Lower Paxton Township[, Dauphin County, Pennsylvania,] in an area with a posted speed limit of 55 [mph]  With his [police cruiser] stationary and facing the northbound lanes near mile marker 71, Trooper Thomas was conducting speed limit enforcement using a handheld radar device.  The radar device used by Trooper Thomas was a Genesis

---

[1] 75 Pa.C.S.A. § 3362(a)(2).

handheld radar device which had a certificate of accuracy that was valid until July 12, 2024, and which [Trooper Thomas] tested with a tuning fork prior to the beginning of his patrol shift on February 25, 2024.

At [] 12:46 p.m., using the radar device, [Trooper Thomas] detected a black Hyundai Sonata traveling 76 [mph], which exceeded the posted speed limit by 21 [mph.  Trooper Thomas maneuvered his police cruiser] behind [Appellant's] vehicle and initiated a traffic stop near Exit 72.  [Trooper Thomas] exited [his police cruiser], activated his emergency lights, and made contact with [Appellant.]   After [speaking] with Appellant, [Trooper Thomas] elected to "give him a break" and issued Appellant a traffic citation for traveling only 5 [mph] over the speed limit, rather than the full 21 [mph] over the limit.  After issuing the citation, [Trooper Thomas] terminated contact with Appellant and resumed his patrol duties.

On July 23, 2024, following a hearing before a magisterial district judge[,] Appellant was found guilty of exceeding a 55 [mph] speed limit by 21 [mph]   Although Appellant was initially cited for exceeding the speed limit by only 5 [mph], the citation was [revised] to 21 [mph] at the [magisterial] hearing[.]   Trooper Thomas explained the reasoning for amending the citation as follows:

> So[,] I advised [Appellant] that I gave him a break by citing him for traveling only 5 [mph] over the speed limit at the preliminary hearing.  He didn't want that.  He wanted to still have a hearing.  Since I cannot testify to the fact that he was doing 60, he was actually doing 76 [mph] in a 55 [mph zone], I amended the citation [] to the original speed of 76 [mph] in a 55 [mph zone].

On July 26, 2024, Appellant filed a summary appeal in the Court of Common Pleas [of Dauphin County].  Following a summary appeal hearing held on February 12, 2025, [the trial] court found Appellant guilty of exceeding maximum speed limits by 21 [mph], in violation of 75 Pa.C.S.[A.] § 3363(a)(2).  In connection therewith, [the trial] court imposed a fine of $67.00.

Trial Court Opinion, 6/11/25, at 1-2 (extraneous capitalization, record citations, and original brackets omitted). This appeal followed.[2]

> Appellant raises *pro se* the following issues for our review:
>
> 1. Whether [the] trial court erred in not dismissing the summary traffic citation where Trooper Thomas's intentional purging [of] exculpatory evidence[, namely] the audio and video [recordings] of the traffic stop[,] greatly hampered and prejudiced Appellant's ability to defend against the charges?
>
> 2. Whether [the] trial court was biased and violated Appellant's 6th [and] 14th Amendment rights [under] the United States Constitution and Article [I, Section] 9 of the Pennsylvania Constitution, when trial court answered a question posed to [] Trooper [Thomas, thereby denying Appellant] a fair and impartial hearing?
>
> 3. Did the trial court commit reversible error when it directly answered Appellant's cross-examination question posed to [Trooper Thomas]?
>
> 4. Whether trial court erred in finding Appellant guilty of the higher speed when it offered testimony that it takes one [] minute to travel a mile?

Appellant's Brief at 4-5.[3]

In his first issue, Appellant asserts that the trial court erred when it denied his request to dismiss the criminal charges based upon an alleged failure by the Commonwealth to produce requested discovery thereby violating Appellant's due process rights as guaranteed by the 14th Amendment

---

[2] Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

[3] For ease of identification, we have assigned page numbers to Appellant's unpaginated appellate brief.

of the United States Constitution. *Id.* at 12-13, *citing* ***California v. Trombetta***, 467 U.S. 479 (1984) and ***Arizona v. Youngblood***, 488 U.S. 51 (1988); ***see also*** N.T., 2/12/25, at 4 (requesting a dismissal of the criminal charged based upon the Commonwealth's failure to produce requested discovery materials).[4]  Specifically, Appellant contends that Trooper Thomas "purged exculpatory audio and video evidence in his possession."  Appellant's Brief at 12.  Appellant further asserts that the "intentional destruction of evidence undermines the fairness and integrity of the judicial process."  ***Id.***

Without citation, Appellant's issue raises a claim that the Commonwealth violated the strictures of ***Brady v. Maryland***, 373 U.S. 83 (1963).  Under ***Brady***, the Commonwealth is obligated to disclose all favorable evidence that is material to the guilt or punishment of an accused, even in the absence of a specific request by the accused.  ***Bagnall***, 235 A.3d 1075,  1085 (Pa. 2020) (citation omitted).  To establish a ***Brady*** violation, a defendant must show that: "(1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the prosecution has either willfully or inadvertently suppressed the evidence; and (3) the evidence was material, causing prejudice to the defendant."  ***Id.*** at 1086.

---

[4] At the summary appeal hearing, Appellant stated that the Commonwealth denied his request to produce "Trooper Thomas's body [camera video recording, and] the vehicle camera and audio [recordings from the] section of the highway[ where the incident occurred.]"  N.T., 2/12/25, at 3.

Typically, we "review a challenge to a trial court's ruling regarding alleged discovery violations under an abuse of discretion standard." **Commonwealth v. Spotti**, 94 A.3d 367, 382 (Pa. Super. 2014) (citation omitted), *dismissing appeal as improvidently granted*, 132 A.3d 972 (Pa. 2016). A claim that a **Brady** violation occurred, however, raises a question of law for which our standard of review is *de novo* and our scope of review is plenary. **Bagnall**, 235 A.3d at 1084.

"Exculpatory evidence is not confined to evidence that reflects upon the culpability of the defendant. Exculpatory evidence also includes evidence of an impeachment nature that is material to the case against the accused." **Commonwealth v. Strong**, 761 A.2d 1167, 1171 (Pa. 2000). "[I]mpeachment evidence is material, and thus subject to obligatory disclosure, if there is a reasonable probability that had it been disclosed the outcome of the proceedings would have been different." **Bagnall**, 235 A.3d at 1087, *quoting* **Strong**, 671 A.2d at 1174. "In analyzing whether a defendant has demonstrated a reasonable probability of a different outcome, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." **Bagnall**, 235 A.3d at 1087 (citation, original quotation marks, and brackets omitted). "Stated differently, a defendant shows a 'reasonable probability' of a different outcome when the government's suppression of

evidence undermines confidence in the outcome of the trial." *Id.* (original quotation marks omitted), *citing* **Kyles v. Whitley**, 514 U.S. 419, 434 (1995).

Under **Brady**, the Commonwealth is not required to disclose evidence that might "merely form the groundwork for possible arguments or defenses." **Commonwealth v. Roney**, 79 A.3d 595, 608 (Pa. 2013), *cert. denied*, 574 U.S. 829 (2014). **Brady** also does not require that the Commonwealth disclose "'every fruitless lead' considered during a criminal investigation." **Roney**, 79 A.3d at 608. Additionally, no **Brady** violation occurs if the defendant knew or, through the exercise of reasonable diligence, could have found the evidence at issue. *Id.* (citations omitted). The duty to disclose does, however, "extend to exculpatory evidence in the files of police agencies of the government bringing the prosecution." *Id.* (citations omitted).

At the summary appeal hearing, the Commonwealth, in response to Appellant's claim that his discovery request had been denied, stated,

> Your Honor, we don't have possession of any of these items. The body [camera video,] I am told[,] was destroyed within 60 days. This happened back in February [] 2024. This is not any discovery that we have access to. And[,] we don't retain [Pennsylvania Department of Transportation ("PennDOT") video or audio recordings] for evidentiary purposes. So[,] that is nothing we have access to.

N.T., 2/12/25, at 4.

"Prosecutors must perform their duties under **Brady** in conjunction with the police, and a **Brady** violation may occur where evidence in the possession of the police is not disclosed to the defendant, even if the prosecutor did not know about it." **Commonwealth v. Adams**, 177 A.3d 359, 372 (Pa. Super.

2017), *citing* **Commonwealth v. Burke**, 781 A.2d 1136, 1142 (Pa. 2001). Police destruction of, or failure to preserve, exculpatory evidence, regardless of intention, constitutes a **Brady** violation. **Adams**, 177 A.2d at 373, *citing* **Commonwealth v. Snyder**, 963 A.2d 396, 406 (Pa. 2009). An appellant must provide support for an allegation that the destroyed evidence was exculpatory. **Commonwealth v. Hill**, 348 A.3d 264, 284 (Pa. Super. 2025), *citing* **Commonwealth v. Small**, 741 A.2d 666, 676 (Pa. 1999). The contention that destroyed evidence was exculpatory cannot be based on a mere assertion. **Hill**, 348 A.3d at 284.

When the Commonwealth fails to preserve or destroys evidence, this effectively prevents an appellant from establishing that the evidence was exculpatory or impeaching, and the analysis then turns on whether the potentially useful evidence was destroyed in bad faith. **Id.** Where evidence is potentially useful, rather than exculpatory, but has been destroyed, a constitutional violation occurs only where such evidence is destroyed in bad faith. **Commonwealth v. Donoughe**, 243 A.3d 980, 985 (Pa. Super. 2020) (stating, "when the Commonwealth fails to preserve evidence that is 'potentially useful,' there is no federal due process violation unless a criminal defendant can show bad faith on the part of the police" (original quotation marks and brackets omitted) (*quoting* **Commonwealth v. Chamberlain**, 30 A.3d 381, 402 (Pa. 2011)); *see also Hill*, 384 A.3d at 284 (requiring a showing of "bad faith" in the destruction of "potentially useful" evidence before finding a due process violation).

The police are required "to preserve evidence in that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Adams*, 177 A.3d at 373 (original quotation marks omitted), *citing Snyder*, 963 A.2d at 402. The deletion or destruction of evidence, such as body camera video, when performed pursuant to police department policy, however, does not constitute bad faith actions by the police absent a showing that "the destruction was accomplished in a calculated effort to circumvent the disclosure requirements." *Commonwealth v. Free*, 902 A.2d 565, 572 (Pa. Super. 2006), *citing Trombetta*, 467 U.S. at 488; *see also Donoughe*, 243 A.3d at 984-985 (concluding that the police did not act in bad faith when the disposal of "potentially useful" evidence was in accordance with applicable departmental policies).

The trial court explained its decision to deny Appellant's request to dismiss the criminal charge based upon an alleged *Brady* violation as follows:

> Appellant has not established a *Brady* violation with regard to the materials he purportedly requested, as he is unable to satisfy any of the requisite elements for a *Brady* violation. First, Appellant [] failed to establish that the Commonwealth suppressed any evidence. The district attorney represented to the [trial] court that the [Commonwealth] never had possession of Trooper Thomas's body camera footage and that [it was] unable to obtain the footage because it had been destroyed within 60 days of the traffic stop. There is nothing to suggest that such destruction was nefarious or that it occurred at the direction of the [Commonwealth] rather than by the police as a matter of course. As for the highway camera footage, the [Commonwealth] stated that [it] never had possession of such footage, and such footage

- 8 -

would have been in the possession of PennDOT. To the extent there was a procedure by which Appellant could have requested these materials, he should have requested the materials from PennDOT directly, and it was not the [Commonwealth's] responsibility to reach out to PennDOT and obtain those materials that Appellant wished to use for his defense. Secondly, aside from generic assertions that the requested materials were "important for him to have to be able to defend his case, Appellant [] failed to affirmatively demonstrate exactly what the body camera and highway camera footage would have shown and how such footage could have been used for purposes of exculpation or impeachment. Thirdly, because he [] failed to affirmatively demonstrate the evidence's exculpatory value, Appellant is unable to establish that the absence of such evidence prejudiced him, *i.e.*, that, there was a reasonable probability that the result of the proceeding would have been different had he presented the evidence.

Trial Court Opinion, 6/11/25, at 7 (formatting modified; original brackets and record citation omitted).

Upon review, we concur with the trial court, and the record supports, that Appellant failed to establish that the requested evidence was exculpatory in nature or could be used to potentially impeach a witness. Furthermore, the record supports the trial court's conclusion that Appellant failed to establish that the "potentially useful" evidence was destroyed by the police in bad faith.[5] At the summary appeal hearing, Appellant offered only a bald assertion that

_____

[5] To the extent that Appellant asserts that the Commonwealth failed to disclose camera and audio recordings maintained by PennDOT, we concur with the trial court that the Commonwealth was under no obligation to provide this evidence to Appellant. Rather, Appellant was free to seek this evidence through appropriate means from PennDOT. Therefore, we do not consider whether the evidence was destroyed, if, in fact, it no longer exists, in bad faith.

the Commonwealth's failure to disclose the requested evidence "tied [his] hands" and precluded him from "defend[ing his] case." N.T., 2/12/25, at 3. Appellant failed to demonstrate how the requested evidence was exculpatory or how it could be used to impeach a witness. Moreover, assuming arguendo that the evidence was "potentially useful," Appellant failed to establish bad faith on the part of the police department in the deleting and destroying of the body camera video. Rather, as the Commonwealth explained, and Appellant offered no contradictory evidence, the body camera video was destroyed 60 days after the incident. Therefore, Appellant failed to establish a **Brady** claim.

In his second issue, Appellant asserts that the trial court violated his due process rights to a "fair and impartial trial" when the trial court "interject[ed] and answer[ed] a factual question for the [Commonwealth's] witness[.]" Appellant's Brief at 14-15. It is well-established that "[a] question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." **Commonwealth v. Tejada**, 161 A.3d 313, 317 (Pa. Super. 2017), *quoting* **Smith**, 131 A.3d 467, 472 (Pa. 2015).

Appellant failed to direct this Court's attention to the specific instance in the record where the trial court "interjected" and "answered" a factual question on behalf of Trooper Thomas. Therefore, we find Appellant waived his claim that the trial court violated his due process rights. **See Commonwealth v. Briggs**, 12 A.3d 291, 341 (Pa. 2011) (finding that, where an appellant fails, *inter alia*, to develop an argument with appropriate

reference to relevant evidence in the record to support the claim, the claim is "utterly undeveloped" and waived for purpose of direct appeal). Moreover, our review of the notes of testimony from the summary appeal hearing does not reveal an instance that supports Appellant's due process claim. To the extent that Appellant takes issue with the trial court's response to Appellant during a discussion regarding the Commonwealth's objection to Appellant's line of questioning, we find this response does not support Appellant's argument. Rather, Appellant characterized the flow of traffic on the highway during his traffic violation as "busy." N.T., 2/12/25, at 18. The trial court reminded Appellant that Trooper Thomas testified that the traffic was "moderate." **Id.** at 18; **see also id**. at 10 (wherein Trooper Thomas described the flow of traffic that day as "moderate traffic conditions").

Appellant's third issue raises a claim that the trial court committed reversible error when it "directly answered Appellant's cross-examination question to [Trooper Thomas]." Appellant's Brief at 15-16. Again, Appellant failed to develop his argument with specific citation to the record where the trial court allegedly answered on behalf of Trooper Thomas during Appellant's cross-examination of this witness. **See generally** N.T., 2/12/25. Rather, Appellant simply described the instance as "[t]his judicial misconduct" without specific reference to the record. As such, we find this claim waived. **See Briggs**, 12 A.3d at 341.

Appellant's final issue raises a claim of judicial misconduct, as well as prosecutorial misconduct. Appellant's Brief at 16-17. Appellant claims that

when he asked Trooper Thomas, on cross-examination, how long it took to drive one mile, the trial court answered for Trooper Thomas and the Commonwealth corrected Trooper Thomas' answer. *Id.* Appellant has not cited to a portion of the certified record where this alleged error occurred. *Id.* Our review of the notes of testimony reveals the following exchange between Appellant, acting *pro se*, and Trooper Thomas, as a witness for the Commonwealth:

| [Appellant:] | So from mile marker 71 to mile marker 72, if you were timing someone, what would be the speed or time to get from mile 71 to mile 72? |
|---|---|
| [Trooper Thomas:] | I don't know. I can't testify to that. |
| [Appellant:] | You can. You got experience. |
| [Trooper Thomas:] | I do. I see generally but it depends on traffic. I don't know. If you are going 67 miles per hour it would be one minute. |

N.T., 2/12/25, at 15. Appellant has not cited to a portion of the notes of testimony where the trial court or the Commonwealth answered the cross-examination question regarding travel time on behalf of Trooper Thomas. Appellant's Brief at 16-17. Instead, Appellant asserts that the court reporter "either took it upon herself or was directed to retract or omit the transcript records." *Id.* at 15. The court reporter certified "that the proceedings and evidence are contained fully and accurately in the notes taken by me[.]" N.T., 2/12/25, at 22. As such, we find no support for Appellant's bald assertion that the court reporter falsified the notes of testimony. Moreover, we find no instance where the trial court or the Commonwealth

supplemented Trooper Thomas' answer. Therefore, Appellant's issue merits no further consideration or relief.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/1/2026