**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NAGEEA ZANIER CLAY | : | |
| | : | |
| Appellant | : | No. 1315 MDA 2025 |

Appeal from the Judgment of Sentence Entered August 21, 2025
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0001907-2023

BEFORE:  DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED: MAY 19, 2026**

Nageea Zanier Clay ("Appellant") seeks review of the August 21, 2025 judgment of sentence of six months' probation imposed after a trial court found her guilty of Driving Under the Influence-General Impairment ("DUI") and Following too Closely.[1]  Appellant challenges the sufficiency of the evidence underlying her DUI conviction.  After careful review, we affirm.

The trial court aptly summarized the factual and procedural history of this case as follows:

> On March 18, 2023, at approximately 4:19 AM[,] Pennsylvania State Trooper David Highhouse [who is a certified drug recognition expert with over ten years' experience in DUI enforcement] was on duty patrolling Cumberland County along I-81.  He noticed a vehicle in the right lane traveling north that was closely tailgating the car in front of it.  As the vehicle continued, Trooper Highhouse observed it swerving left and right within its lane. Trooper Highhouse followed and observed the vehicle tailgate and swerve

---

[1] 75 Pa.C.S. §§ 3802(a)(1), 3310(a).

for approximately five miles. Suspecting that the driver might be impaired, he initiated a traffic stop.

When he activated his emergency lights, the driver passed an off-ramp and then a rest area, eventually pulling over onto the shoulder of the roadway. Trooper Highhouse described the spot where the vehicle stopped as a "high risk area" for a traffic stop to occur. Trooper Highhouse identified the driver of the vehicle as Appellant. At the stop when the trooper requested the driver to produce her license, insurance, and registration, he noticed that she spent several minutes looking for them. Additionally, as he asked her questions, she failed to answer and avoided facing the officer. Instead, it was the front seat passenger who answered his questions for her. Due to her evasive behavior, Trooper Highhouse asked Appellant to step out of the vehicle for further questioning.

During their interaction, he noticed the smell of alcohol on Appellant's breath, prompting him to ask where she had been. Appellant mentioned that she had just left a party in Shippensburg. When the trooper inquired whether she had consumed any alcohol, she denied it. However, Trooper Highhouse observed that Appellant's eyes were watery and bloodshot and that her responses were delayed. This led him to administer the horizontal gaze nystagmus test. During the investigation, Appellant retracted her initial denial and admitted to having taken two shots of alcohol. A preliminary breath test indicated that there was presence of alcohol.

Based on his total observations, the officer determined that Appellant was impaired to a degree [] that rendered her incapable of safely driving. The officer decided against conducting additional field sobriety tests based on the unsafe location of the stop. Appellant was then taken into custody and refused to submit to a chemical blood test [even after being told her refusal would result in the suspension of her driver's license]. She was charged with a first offense [DUI], Following Too Closely, and Careless Driving.

Tr. Ct. Op., 11/18/25, at 1-3 (footnotes citing notes of testimony omitted).

The court held a bench trial on August 21, 2025, at which Trooper

Highhouse testified and the Commonwealth admitted the DL-26(b) form

indicating Appellant refused to consent to chemical testing. Appellant presented no evidence. The court found Appellant not guilty of Careless Driving but guilty of the remaining offenses. The court sentenced her to a term of six months' probation on the DUI conviction and an aggregate fine of $325.00.

Appellant timely appealed. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises one issue for our review: "Whether the evidence presented at trial was sufficient to convict Appellant of [DUI]?" Appellant's Br. at 9. She argues that "the observations made by Trooper Highhouse . . . did not show that alcohol had substantially impaired the normal mental and physical faculties required to safely operate a vehicle." *Id.* at 16.

"A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). Our standard of review is *de novo*, and our scope of review is limited to the evidence admitted at trial and all reasonable inferences to be drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner. ***Id.*** "Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law." ***Id.***

"[W]hile passing on the credibility of the witnesses and the weight of the evidence [the factfinder] is free to believe all, part, or none of the

evidence." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017).

"Our jurisprudence does not require fact[]finders to suspend their powers of logical reasoning or common sense in the absence of direct evidence. Instead, [the factfinder] may make reasonable inferences from circumstantial evidence introduced at trial." ***Commonwealth v. Teems***, 74 A.3d 142, 148 (Pa. Super. 2013) (internal citation omitted).

To sustain a conviction under the general impairment section of the DUI statute, the Commonwealth's evidence must be sufficient to prove, in relevant part, that the individual imbibed "a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa. C.S. § 3802(a)(1). Thus, the Commonwealth must show: "(1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render [her] incapable of safe driving." ***Commonwealth v. Gause,*** 164 A.3d 532, 541 (Pa. Super. 2017) (*en banc*).

To establish the second element, the Commonwealth "must show that alcohol has substantially impaired the normal mental and physical faculties required to safely operate the vehicle." ***Commonwealth v. Donoughe***, 243 A.3d 980, 986 (Pa. Super. 2020) (citation omitted). "Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise

judgment, to deliberate or to react prudently to changing circumstances and conditions." *Id.* (citation omitted).

In *Commonwealth v. Segida,* 985 A.2d 871 (Pa. 2009), our Supreme Court noted the types of evidence a fact finder may consider in determining whether the individual was incapable of driving at the time of the offense. This evidence includes the individual's "actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol[;] and slurred speech." *Segida*, 985 A.2d at 879. In addition, evidence of the refusal to submit to chemical testing may be considered as part of the totality of the circumstances, although "[n]o presumptions shall arise from the refusal." *See* 75 Pa.C.S. § 1547(a),(e). "The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony." *Segida*, 985 A.2d at 879.

Appellant analogizes her case to *Gause, supra*. In *Gause*, an *en banc* panel of this Court vacated the appellant's conviction for DUI-General Impairment after concluding the evidence was insufficient to support the

appellant's conviction where both officers involved in the traffic stop testified that there were no signs of alcohol impairment. *Gause*, 164 A.3d at 535.[2]

Appellant argues that, as in *Gause*, there was insufficient evidence to support her conviction under Section 3802(a)(1) because Trooper Highhouse "did not administer field sobriety tests and could not say that she showed any signs of impairment." Appellant's Br. at 18. She also notes that she was cooperative and presented the requested documents without fumbling when asked by Trooper Highhouse, even though it took some time for her to find them. *Id.* She further notes that the trooper "did not observe any slurred speech, swaying, inability to balance, or a staggering gait." *Id.* at 19. She emphasizes that the Commonwealth could not produce a motor vehicle recording from a dash or body camera and argues that the lack of the recording, combined with the failure to conduct standard field sobriety tests, rendered her conviction unsupported by sufficient evidence. *Id.* at 20.[3]

---

[2] One officer in *Gause* had opined that the appellant's trembling eyelids were a sign of marijuana intoxication, but this Court found that testimony to be inadmissible. *Id.* at 536.

[3] With respect to audio and video recordings, Trooper Highhouse testified that in March 2023, state troopers did not yet have body cameras and, although there was a motor vehicle recording which he had formally requested to be saved, his request "was overlooked" and the video was not retained. *Id.* at 26-27.

The trial court concluded that although there were no standard field sobriety tests, there were other "significant signs of impairment" that supported the conviction. Tr. Ct. Op. at 6.

> The trooper stopped [] Appellant at 4:19 A.M. because she was tailgating a vehicle in front of her and swerving from side to side for five miles. Once he activated his lights and sirens, []Appellant failed to pull over at two safe and logical spots. Instead, she pulled over where the trooper found it unsafe to provide [standard field sobriety tests]. When the trooper interacted with [] Appellant and asked for her documents, she took a few minutes to retrieve them, evading the trooper's questions and avoiding eye contact. Reasonably, the trooper investigated further by having [] Appellant step out of the vehicle, only to observe other indicators of impairment. The trooper noticed the odor of alcohol on [] Appellant's breath and watery and bloodshot eyes and her responses were delayed. This prompted him to conduct a nystagmus test and then a preliminary breath test that detected the presence of alcohol. [] Appellant also told the trooper that she was coming home from a party and denied drinking any alcohol, only to later admit to drinking two shots. Finally, [] Appellant refused a chemical test of her blood after being told she could lose her license for a year. . . .
>
> Based on the observations made by the trooper, there were sufficient indicators that [] Appellant was intoxicated to a degree that rendered her impaired to drive. It was within this court's discretion to weigh the evidence offered to it, and it determined that [standard field sobriety tests] were not crucial to the arrest nor to the conviction.

*Id.* at 6-7.

Based on our review of the record, we conclude sufficient evidence supported Appellant's DUI conviction. At the time of trial, Trooper Highhouse had at least 10 years of experience as a Pennsylvania State Trooper and 3 years of experience as a South Carolina State Trooper detecting impaired driving. N.T. Trial, 8/21/25, at 4-6. In addition, Trooper Highhouse testified

that he had received extensive training in South Carolina and Pennsylvania with respect to standardized field sobriety testing, in addition to advanced training in drug impairment, and that he is certified as a drug recognition expert. *Id.* He testified that he has frequently observed drivers stopped for motor vehicle violations who admit to having imbibed alcohol, but he has not always found them to be impaired. *Id.* at 6.

Most relevant here, Trooper Highhouse's testimony, found to be credible by the trial court, detailed the signs of intoxication he observed. Specifically, he noted Appellant's weaving within her lane and travelling less than one car length behind another vehicle for approximately five miles and then failing to pull over at the first available safe spot along the highway once signaled to do so. *Id.* at 9-14. He also testified that Appellant would not look at him or answer his questions and the front passenger answered the questions for her. *Id.* at 16. In addition, he testified that, in his experience, her inability to locate her registration and insurance card while shuffling through her papers several times indicated a sign of impairment. *Id.* at 16-17. Trooper Highhouse further testified that Appellant's watery and blurry eyes, alcohol on her breath—which also registered on the preliminary breath test—and her denial then admission that she had been drinking at a party prior to the traffic stop, also indicated to him that Appellant was impaired so as to render her unable to drive safely. *Id.* at 10-12, 18-22. He also testified that he did not notice any slurring or swaying and he did not perform field sobriety tests as a

matter of safety, *i.e.*, because of the weather (as noted in his police report), the location of the stop, and the danger the darkness along Route 81 at 4:00 AM presented. *Id.* at 19, 32-33.

In analogizing her case to *Gause*, Appellant emphasizes the evidence that was not presented. Since our standard of review dictates that we consider only the evidence that *was* presented, viewed in the light most favorable to the Commonwealth as the verdict winner, we find Appellant's reliance on *Gause* inapt. Moreover, this Court must defer to the fact-finder's credibility determinations and may not reweigh the evidence. Based on the totality of the circumstances and the evidence found credible by the trial court, we conclude the Commonwealth's evidence supported the determination that Appellant's judgment was impaired by her admitted alcohol use, rendering her unsafe to operate her vehicle. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/19/2026